Phillip S. JOHNSON,

v.

UNITED STATES of America, Respondent.

Nos. 98 Civ. 0967(BDP), 95 Cr. 0427(BDP).

United States District Court, S.D. New York.

July 6, 1998.

---

Philip S. Johnson, Elkton, OH, pro se.

Vincent Broderick, Asst. U.S. Atty., United States Attorney's Office, New York City, for Respondent.

## MEMORANDA and ORDER

PARKER, District Judge.

By Petition docketed February 11, 1998, Philip Johnson petitions pursuant to 28 U.S.C. § 2255 to vacate a sentence imposed by this Court on May 26, 1996 following Johnson's conviction arising out of his participation in an armed robbery of the United States Post Office in Yonkers, New York.

Johnson seeks to vacate his sentence on several grounds. He claims that (1) he was denied due process because the Court failed to implement appropriate remedial steps upon learning of a communication between a prosecution witness and a juror; (2) he was denied an impartial jury in violation of the Constitution because the jury selection process used in the White Plains Courthouse did not result in a jury that represented a fair cross section of the community; and (3) he was denied effective assistance of counsel at trial and on appeal because none of these issues were properly raised by trial or appellate counsel.

■ Johnson's first contention is that the Court improperly handled at trial an alleged communication between a government witness and a juror. During trial the government brought to the Court's attention the possibility of a contact during a break between the case agent, Postal Inspector Thomas Tretola, and a juror. When the government brought the incident to the Court's attention, Kevin Gilleece, Esq., Johnson's trial counsel stated "my client indicated to me and told me he was in the hallway and he said that he saw the inspector talking to jurors. He indicates to me that he does not know what was said."

The Court promptly conducted an inquiry into the incident. In response to questioning by the Court, Inspector Tretola stated:

"Your Honor, just outside, I was talking to two of our witnesses. One is a Yonkers patrolman. The elderly gentleman with the hearing problem came from someplace, I do not know, who was walking directly up to me as if he was going to say something, I just pointed and I said—in effect, the door to the jury room. At that point he departed."

The Court then instructed the government to converse with its witnesses only in the witness room and the United States Attorney's office and instructed the jury not to have "any contact even the most apparently casual or superficial contact with any of the witnesses or lawyers, or agents, or court personnel during the breaks."

Now, more than two years after the event in question, Johnson has materially altered his version of the facts and contends for the first time that he heard Inspector Tretola say to the individual who had approached him that "Philip Johnson was a postal employee and a bad guy."

Certainly if there were any truth to Johnson's current version, it would have surfaced when the incident occurred. The Court's contemporaneous inquiry into this issue led the Court to the conclusion that no substantive contact at all occurred between Inspector Tretola and a juror, and therefore nothing occurred that was "presumptively prejudicial." *Bibbins v. Dalsheim,* 21 F.3d 13, 16 (2d Cir.1994). Moreover, even if Johnson's current version of what he heard is credited—something the Court does not do—the extra judicial information would not be prejudicial since it was not disputed that Johnson was a postal employee and the government's entire theory was in effect that Johnson was an armed robber—i.e. "a bad guy." *See United States ex. rel. Owen v. McMann,* 435 F.2d 813, 818 (2d Cir.1970). Moreover, the evidence of guilt at trial was overwhelming. Consequently, this Court concludes that under either version, the alleged extra record information was non-prejudicial since there was an abundance of properly admitted evidence of guilt. *United States v. Weiss,* 752 F.2d 777, 783 (2d Cir.1985).

Johnson's appellate counsel's decision not to raise this issue on appeal was reasonable and falls well short of offending the stan-

dards of effectiveness set forth *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, even if a contrary conclusion were reached there is no reasonable probability that the result in these proceedings would have been different given the substantial evidence of Johnson's guilt.

Next, Johnson claims that he was denied an impartial jury in violation of his rights under the Sixth and Fourteenth Amendments because "no black member of the community was available for his trial" and that failure "to provide some black members of the community to sit on the jury injected a strong potential for prejudice because petitioner was not tried by a jury comprised of his peers."

■ On this issue Johnson raises two claims. First is that the White Plains jury veneer did not constitute a fair cross section of the community. But Johnson has not met the test articulated in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) which requires a showing not only that a distinctive group's representation on the jury veneer was not fair and reasonable in relation to the numbers of such persons in the community, but also that the under-representation is due to the systematic exclusion of the group in question. In other words, Johnson presents nothing in support of his claim that the jury selection process utilized to obtain jurors for his trial did not afford him the opportunity for a representative jury veneer. *See United States v. Jackman,* 46 F.3d 1240, 1244 (2d Cir.1995).

Johnson's second claim is that his counsel was ineffective for not pushing this issue more diligently. Again, however, Johnson's contentions fall well short of establishing the standards set forth in *Strickland v. Washington,* (*supra*) for relief. First of all, while Johnson claims there were no blacks on his jury, he makes no showing of any infirmity in the jury selection process in the White Plains Courthouse—and certainly none of constitutional magnitude. Johnson also does not show what additional steps he believes trial counsel was required by *Strickland* to take. Moreover, assuming *arguendo,* that an objective standard of reasonableness required some unknown additional steps, Johnson has not demonstrated that, the failure to take such steps, prejudiced him in any way.

For the foregoing reasons and for the reasons set forth in the government's memorandum filed April 7, 1998, the Petition is, in all respects, denied. The Clerk shall file a final judgment dismissing the petition. This Court determines that, since any appeal from the dismissal of this Petition would be meritless, the Court would decline to issue a Certificate of Appealability, *see* 28 U.S.C. § 2253(c)(1). Nor would this Court grant *in forma pauperis* status. *See* 28 U.S.C. § 1915.

SO ORDERED: