Christopher BIBBINS, Petitioner–Appellant,

v.

Stephen DALSHEIM, Superintendent of Downstate Correctional Facility, Respondent–Appellee.

No. 1132, Docket 93–2697.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1994.

Decided April 11, 1994.

Robert N. Isseks, Goshen, NY, for petitioner-appellant.

Keith J. Cornell (Kenneth Gribetz, Dist. Atty., Rockland County, NY, Deborah Wolikow Loewenberg, of counsel), for respondent-appellee.

Before: LUMBARD, VAN GRAAFEILAND and JACOBS, Circuit Judges.

PER CURIAM:

Christopher Bibbins claims that his Sixth Amendment rights were violated by the failure of a state court to set aside his conviction on the ground of juror misconduct, and appeals from an order of the United States District Court for the Southern District of New York (Brieant, *J.*), denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). A few minutes after a street sale of cocaine to an undercover agent, police spotted Bibbins across the street and arrested him because he fit the description of the seller. One juror told the others that she was a resident of the area in which the transaction and arrest took place and that there were no open places of business there. Bibbins offered proof that this statement influenced at least one other juror to render a guilty verdict on the theory that the absence of other people made the street identification of the defendant more compelling. Although this information was outside the record, we affirm because there was no juror misconduct and because the alleged violation of Bibbins's Sixth Amendment rights would have had no substantial and injurious influence on a reasonable jury.

## BACKGROUND

Bibbins was arrested on February 14, 1990 following his sale of $40 of cocaine to an undercover agent in Spring Valley, New York. Bibbins was charged with the criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. N.Y. Penal Law §§ 220.39, 220.16 (McKinney 1989).

Evidence introduced at trial established that on December 1, 1989, the Rockland County District Attorney's Narcotics Task Force was engaged in a joint investigation with Spring Valley police ·in the section of Spring Valley known as "The Hill." Shortly before 7:30 p.m., Investigator Marvin Miller of the Narcotics Task Force drove his unmarked car into the parking lot of a group of stores known collectively as 74 Ewing Avenue. He was operating undercover and wired with a concealed transmitter. Miller testified that after he pulled into the lot, he watched Bibbins leave a group of people who were standing in the middle of the parking lot, walk past nearby street lights and the headlights of Miller's unmarked car, and approach his driver's side window. At this point, Bibbins bent down and peered into Miller's car as he sold Miller $40 worth of cocaine. The transaction took 30 to 60 seconds.

At trial, Miller described the seller of the cocaine in great detail and made a positive identification of Bibbins as the seller. Miller testified that he was (or had been) a resident of the area, had seen Bibbins on five or six occasions prior to the transaction and had played basketball with him. Miller also described the parking lot where the transaction took place and provided the foundation for the admission of a photograph depicting the area. The photograph showed that the storefronts were boarded up.

Detective William Michella of the Narcotics Task Force testified that he tape-recorded the drug transaction at about 7:24 p.m. that evening. Shortly thereafter, Miller transmitted to Michella a description of the suspect's clothing and identified him as a black man. Officer Rodrick of the Spring Valley police confirmed that at about 7:25 p.m. Miller relayed a description of the suspect, describing him as a black male, 5'10" to about 5'11", medium complexion, wearing a blue ski parka with red stripes on the sleeves, a black knit cap, and blue acid-washed jeans.

About five minutes later, Rodrick and fellow Spring Valley officer Anthony Jackus arrived at 74 Ewing Avenue, and, seeing no one in the parking lot, proceeded to a nearby intersection. From the intersection, they saw a man standing in a parking lot on the other side of Ewing Avenue. He was black, 5'10" to 5'11", wearing a dark blue ski jacket with red stripes on both sleeves, a dark blue or black knit cap, and blue acid-washed jeans. Officer Rodrick recalled the man from previous encounters in the area and recognized him as Christopher Bibbins. At trial, Rodrick identified Bibbins as the man he had seen that night. Rodrick further testified that he was familiar with Bibbins's voice and identified him as the seller on the tape recording of the drug transaction.

The defense argued misidentification. Bibbins's girlfriend and uncle both testified that Bibbins invariably wore two gold caps on his front teeth and that they did not recognize Bibbins's voice on the tape of the transaction. In cross-examining prosecution witnesses, the defense had earlier brought out that Miller (who spoke to the drug dealer at Miller's car window) had made no mention that the drug dealer had gold teeth. Bibbins also stood before the jury and counted to 16, allowing the jury to gauge how conspicuous his caps were when he spoke.

In the State's rebuttal, Miller explained that he had not been able to see Bibbins's teeth during the limited conversation required to do the transaction. After a full day of deliberation, the jury returned a unanimous verdict convicting Bibbins on both counts of the indictment.

After the conviction, Bibbins moved in the County Court for a new trial on the ground of juror misconduct. Bibbins submitted affidavits from two of the jurors from Bibbins's trial. Juror Eileen Krainak averred that, in discussing the accuracy of Officer Rodrick's identification of Bibbins, she had told the other jurors that she had lived in the Spring Valley area and that there were no open businesses in the vicinity of the spot where the drug transaction took place. In her affidavit, Krainak also gave her impression of what evidence had been adduced at trial on this issue, described the impression her statement made on the other jurors, and gave the tally of the jury's votes before and after she made it. The affidavit of juror John Urban confirmed Krainak's affidavit in

all these respects, and described the effect that the extra-record information had on his vote.

In opposition to Bibbins's motion, the State submitted a second affidavit from juror Krainak in which she partially recanted her earlier account by changing the sequence of her comments in relation to the jury's votes in a way that weakened any inferences concerning the effect of her disclosure on the jury's verdict. In other respects, Krainak substantially confirmed her earlier affidavit, repeating that she had told the other jurors that she thought there were no open businesses at 74 Ewing Avenue.

The trial court denied Bibbins's motion without conducting a hearing, finding, *inter alia,* that juror Krainak's statement was "reflected, in part, in the trial testimony and photograph in evidence." The Appellate Division of the Supreme Court, Second Judicial Department, affirmed the trial court's ruling. *People v. Bibbins,* 188 A.D.2d 539, 591 N.Y.S.2d 445 (2d Dept.1992). The New York Court of Appeals denied leave to appeal. *People v. Bibbins,* 81 N.Y.2d 882, 597 N.Y.S.2d 942, 613 N.E.2d 974 (March 17, 1993). Bibbins's petition for a writ of habeas corpus was denied by the district court, and Bibbins now appeals that denial.

## DISCUSSION

■ The Sixth Amendment guarantees criminal defendants the right to a trial by jury, including the right to confront one's accusers. U.S. Const. Amend. VI. The Supreme Court has interpreted this provision to require that the jury's verdict "be based upon the evidence developed at the trial." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). A defendant's Sixth Amendment rights are therefore implicated when the jury considers incriminating evidence that was not admitted at trial. *United States v. Simmons,* 923 F.2d 934, 943 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *United States ex rel. Owen v. McMann,* 435 F.2d 813, 817–18 (2d Cir.1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971).

■ On our direct review of federal convictions, extra-record information that becomes known to the jury is "presumptively prejudicial." *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954); *United States v. Weiss,* 752 F.2d 777, 782–83 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *United States v. Hillard,* 701 F.2d 1052, 1064 (2d Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1318 (1983). This presumption, however, may be overcome by a showing that the extra-record information was harmless. *Remmer,* 347 U.S. at 229, 74 S.Ct. at 451; *Weiss,* 752 F.2d at 783. As we have said: "The touchstone of decision . . . is thus not the mere fact of infiltration of some molecules of extra-record matter . . . but the nature of what has been infiltrated and the probability of prejudice." *McMann,* 435 F.2d at 818.

■ Our review of the effect of constitutional errors on a state court conviction is more limited. In order to secure a writ of habeas corpus following a state-court conviction, a petitioner alleging that a trial error violated his constitutional rights must show that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1716 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1353, 90 L.Ed. 1557 (1946)). In other words, the petitioner must show "actual prejudice" flowing from the alleged error. *Id.*

■ In assessing petitioner's claim of prejudice, we apply the Federal Rules of Evidence. *See* Fed.R.Evid. 1101(e) (Federal Rules of Evidence govern proceedings under 28 U.S.C. § 2254); *see also Stockton v. Commonwealth of Va.,* 852 F.2d 740, 743–44 (4th Cir.1988), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Federal Rule of Evidence 606(b) generally excludes testimony of a juror impeaching the verdict:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or

emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. . . .

Rule 606(b) contains an exception allowing jurors to testify "on the question whether extraneous prejudicial information was improperly brought to the jury's attention. . . ." Fed.R.Evid. 606(b). This exception is a narrow one. Even when a juror attests to receiving information outside the record, the juror may not go on to testify about the effect of that information on the juror's mental processes or the jury's deliberations. Fed.R.Evid. 606(b); *Mattox v. United States*, 146 U.S. 140, 149, 13 S.Ct. 50, 52–53, 36 L.Ed. 917 (1892) ("a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind") (citation omitted); *United States v. Calbas*, 821 F.2d 887, 896–97 (2d Cir.1987), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988); *Miller v. United States*, 403 F.2d 77, 83–84 n. 11 (2d Cir.1968).

■ "Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." *Miller*, 403 F.2d at 83 n. 11. *See also Calbas*, 821 F.2d at 897 ("the determination of prejudice is an objective one"); *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir.1989) (directing consideration of effect of extra-record information on "hypothetical average jury"). Mr. Urban's affidavit is therefore inadmissible to the extent that it recounts how Ms. Krainak's disclosure affected the thinking and voting of individual jurors or the deliberations of the jury as a whole, including the tally of votes. Instead, we make an independent determination of whether knowledge of the extra-record information would have a substantial and injurious impact on the verdict of a reasonable jury.

■ The jurors' affidavits make clear that the only extra-record information before the jury was Ms. Krainak's opinion that there were no open businesses at 74 Ewing Avenue. We think this information insufficiently

prejudicial to warrant a writ of habeas corpus. To begin with, the extra-record information provided by Ms. Krainak was cumulative. The State introduced into evidence a photograph showing that the shops in the vicinity were boarded up. Ms. Krainak's personal observation to the same effect revealed little that could not be seen in the photograph. Therefore, absent a showing of clear error, we are bound by the state court's factual finding that juror Krainak's statement was "reflected, in part, in the trial testimony and photograph in evidence." *See* 28 U.S.C. § 2254(d)(8); *Senna v. Patrissi*, 5 F.3d 18, 20 (2d Cir.1993).

Bibbins attempts to amplify the importance of Ms. Krainak's disclosure by arguing that the boarded-up shopfronts may take on life at night. Even if we found this argument more persuasive than we do, Ms. Krainak's observation concerning the life of this community is part of the fund of ordinary experience that jurors may bring to the jury room and may rely upon, *see McMann*, 435 F.2d at 817, in the same way that another juror may know that Times Square is busy all night or that there are doormen along stretches of Park Avenue.

Finally, the extra-record information was relevant only to Rodrick's identification of Bibbins as the individual Miller referred to in his radio transmission. The fact that no businesses were open at 74 Ewing Avenue at most increased the odds that Rodrick spotted the same person described by Miller; the jury could certainly credit Rodrick's identification absent this information. Even had the jury assumed that shops at 74 Ewing Avenue were alive with nocturnal activity, the point-for-point correspondence between Bibbins and the person described by Miller would lead a reasonable juror to conclude that Rodrick had correctly identified Bibbins.

Nor was Rodrick's identification of Bibbins at the time of the arrest essential to the government's case. At trial, Miller positively identified Bibbins as the dealer and Rodrick identified Bibbins's voice on the tape recording. The strength of the State's case against Bibbins thus precluded the possibility that the extra-record information provided by Ms.

Krainak would have a substantial and injurious effect on the verdict of a reasonable jury.

██ Petitioner argues that a finding of no actual prejudice is incompatible with Mr. Urban's affidavit, which expressly states that he was swayed by the introduction of extraneous information. This argument is necessarily grounded in state evidentiary rules, as the Federal Rules of Evidence preclude consideration of a juror's mental processes. Accordingly, petitioner in this respect has alleged nothing more than an erroneous application of state law. Even if that happened, it would not provide a basis for relief here. *See Estelle v. McGuire,* — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (federal habeas relief does not lie for errors of state law).

The judgment of the district court is therefore affirmed.