

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-1999

# Wilson v. Vermont Castings Inc

Precedential or Non-Precedential:

Docket 97-7530

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Wilson v. Vermont Castings Inc" (1999). *1999 Decisions.* Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 15, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7530

ANNE K. WILSON; OLIVER J. LARMI,

      Appellants

v.

VERMONT CASTINGS, INC.; VCI ACQUISITION CO.;
PACIFICORP

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

(D.C. No. 93-cv-01724)
(District Judge: James F. McClure, Jr.)

ARGUED: October 27, 1998

BEFORE: STAPLETON, LEWIS and MAGILL,*
Circuit Judges

(Opinion Filed: March 15, 1999)

        Howard K. Goldstein, Esq. (Argued)
        Andrew S. Kessler, Esq.
        Goldstein & Kessler
        1616 Walnut Street
        Suite 918
        Philadelphia, PA 19103
        Counsel for Appellants
_____

*Honorable Frank Magill, Senior United States Circuit Judge for the
Eighth Circuit Court of Appeals, sitting by designation.

Janine M. Torda, Esq. (Argued)
Patrick C. Carey, Esq.
Fine, Wyatt & Carey
425 Spruce Street
P.O. Box 590
Scranton, PA 18501-0590
Counsel for Appellees

Hugh F. Young, Jr.
Product Liability Advisory Council,
 Inc.
1850 Centennial Park Drive
Suite 510
Reston, VA 22091
Counsel for Amicus Appellee

OPINION OF THE COURT

MAGILL, Senior Circuit Judge.

Anne K. Wilson and her husband sued Vermont Castings, Inc. (Vermont Castings) and others after she was seriously burned and disfigured while operating a Vermont Castings woodburning stove. After a jury trial based on strict products liability, the jury returned a verdict for Vermont Castings. Wilson filed a motion for a new trial claiming (1) the jurors were exposed to extraneous information that prejudiced Wilson, and (2) Vermont Castings improperly argued that she was negligent in operating the stove. The district court denied her motion and Wilson now appeals. We affirm.

I.

Anne Wilson owned a woodburning stove manufactured by Vermont Castings. While using this stove on November 16, 1991, Wilson left a side door on the stove open to help get the fire started. As she stood in front of the stove to warm herself, her dress caught on fire, resulting in serious burns and the loss of her fingers on her left hand.

Wilson sued Vermont Castings,1 claiming it was strictly
_____

1. Wilson also sued Pacificorp, a west coast utility company, and VCI Acquisition Co. VCI was dismissed as a party defendant pursuant to

2

liable for her injuries. She claimed the stove was defective because (1) users had to keep the door slightly ajar to keep the fire going, and (2) there was no warning on the stove to tell users to keep the door shut. Before trial, Vermont Castings moved in limine to exclude any evidence of the existence or contents of the stove owner's manual. The district court granted the motion on the ground that Wilson had never read or seen the manual.

During the trial, Wilson's counsel examined Wilson on the events leading up to her being burned. The evidence elicited on direct examination was that she started a fire while leaving the door open, that she stood with her back to the stove to warm her back, and that her left leg was either touching the stove apron or was relatively close to the apron. She testified that her dress was six to eight inches below her knee. After a minute or two in this position, she noticed her dress was on fire. Vermont Castings cross-examined Wilson on these facts.

After a thirteen-day jury trial, the jury returned a verdict for Vermont Castings. Although the jury found that the stove was defective,[2] it found that the defect was not a substantial factor in causing Wilson's injuries.

After trial, Wilson's lawyer, Andrew Kessler, spoke to Juror #9, Penelope Merrill. Merrill told Kessler that another juror owned a Vermont Castings stove. The juror with the stove told the other jurors of her personal experience with the stove, including that she had to leave the door open to start a fire. She told the jurors that the stove came with a manual, and that she had read the manual during the trial to see if there were any warnings. She also informed them of the content of the warnings.[3] The other jurors then asked this juror whether, knowing what she now knew from the trial and from her review of the manual, she would

_____

stipulation of the parties. For purposes of simplicity, we will refer only to
Vermont Castings when referring to the Defendants.

2. It is not clear from the record which alleged defect(s) the jury found existed.

3. There is no evidence in the record as to what these warnings stated.

3

continue to operate the stove with the door open. The juror indicated that she would not modify her behavior even if there were a warning on the stove. See Appellant's App. at 176-77 (Kessler Aff.).

Upon learning this information, Wilson filed a motion for a new trial. She claimed, inter alia, that (1) the jury's verdict was tainted by the information about the stove owner's manual, and (2) during Wilson's cross-examination and Vermont Castings's closing argument, Vermont Castings impermissibly argued that Wilson was negligent in operating the stove. The district court denied the motion. It found no prejudice from the juror's conduct, and found that Vermont Castings's arguments were permissible under Pennsylvania strict products liability law. See Wilson v. Vermont Castings, Inc., 977 F. Supp. 691, 695, 697-99 (M.D. Pa. 1997).

II.

Wilson claims the district court erred in not granting her motion for a new trial based on alleged juror misconduct and alleged improper arguments made by Vermont Castings. This Court reviews a trial court's denial of a motion for a new trial, as well as its investigation of juror misconduct, for an abuse of discretion. See United States v. Bertoli, 40 F.3d 1384, 1392-93 (3d Cir. 1994).

A.

Wilson claims she was prejudiced when one juror informed the others of the existence and contents of a Vermont Castings stove owner's manual and gave her opinion as to how it would affect her own behavior. We disagree.

We begin with the general rule that a juror may not impeach her own verdict. See Virgin Islands v. Gereau, 523 F.2d 140, 148 (3d Cir. 1975); Fed. R. Evid. 606(b). The purpose of this rule is to promote finality of verdicts, encourage free deliberations among jurors, and maintain the integrity of the jury as a judicial decision-making body. Gereau, 523 F.2d at 148.

4

A court may inquire into the verdict, however, if "extraneous prejudicial information was improperly brought to the jury's attention or [if] any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b). The scope of the court's inquiry under Rule 606(b) is limited: the court may inquire only into the existence of the extraneous information. Once the existence of extraneous information has been established, the court may not inquire into the subjective effect of such information on the particular jurors. See, e.g., United States v. Williams-Davis, 90 F.3d 490, 496 (D.C. Cir. 1996); Gereau, 523 F.2d at 149; see also United States v. Jonnet, 762 F.2d 16, 20 (3d Cir. 1985) (in assessing effect of inadmissible evidence brought into jury room, court may not inquire into jury's deliberative process). Instead, the court must make an objective assessment of how the information would affect the hypothetical average juror. See Waldorf v. Shuta, 3 F.3d 705, 710 (3d Cir. 1993). Even where there is evidence of juror misconduct, "the verdict will stand unless the party has been prejudiced by the misconduct." Gereau, 523 F.2d at 153-54.

In this case, Wilson alleges two types of jury misconduct. First, she claims that one juror improperly consulted her own Vermont Castings stove owner's manual during the trial and reported its contents to the jury. Second, she alleges that the same juror advised the other jurors that she also found it necessary to leave her own Vermont Castings stove's door open, and that she intended to continue this practice even if there was a warning, and even in light of what she had learned at trial.

With respect to Wilson's first claim, the district court determined that the manual constituted "extraneous information" but concluded that its consideration did not prejudice Wilson. We agree. Because there was no evidence in the record that Wilson ever read her stove owner's manual, this information was not relevant to causation. Thus, the existence of warnings in the juror's manual related solely to the issue of defect. Because Wilson prevailed on the issue of defect, she was not prejudiced by this extraneous information.

5

We also agree with the district court's conclusion that the juror's statements regarding her own conduct did not warrant a new trial. The district court determined that this information was not "extraneous information" and therefore Rule 606(b) precluded further inquiry. Her statement was an opinion as to the effect of the extraneous information (the contents of the manual) on her views.4 If the district court had considered her statement, it would have been the equivalent of inquiring into the effect of extraneous information on a juror, which is prohibited by Rule 606(b). Cf. Bibbins v. Dalsheim, 21 F.3d 13, 17 (2d Cir. 1994) (affidavit inadmissible to the extent it recounted how juror's disclosure of personal knowledge about relevant facts in case affected the thinking and voting of individual jurors or the deliberations of the jury as a whole). A court may make only an objective assessment of the effect of the extraneous information on the hypothetical average juror. See id.; Waldorf, 3 F.3d at 710. As we have already concluded, the extraneous information was relevant only to defect, and thus could not have affected an average juror in a way that would have prejudiced Wilson.

Because the extraneous information could not have prejudiced Wilson, the district court did not err in refusing to grant a new trial on this ground.5

_____

4. It is important to note that her statement was also influenced by the evidence adduced at trial as well as her own experience as an owner of a Vermont Castings woodburning stove. In this regard, her statement is similar to the permissible instance of a juror bringing her own life experience into a jury room, and thus is not a basis for impeaching the verdict. See Bibbins v. Dalsheim, 21 F.3d 13, 17 (2d Cir. 1994) (juror's opinion that there were no open businesses in location at issue in case not prejudicial; opinion was "part of the fund of ordinary experience that jurors may bring to the jury room and may rely upon . . . in the same way that another juror may know that Times Square is busy all night or that there are doormen along stretches of Park Avenue"); Gereau, 523 F.2d at 151 (verdict not invalid "merely because the jurors' generalized knowledge about the parties, or some other aspect of the case, is an ingredient of the decision. . . . [I]t is not necessary that jurors be totally ignorant about a case." (quotations omitted)).

5. Nor did the court err in refusing to hold a hearing on the claim of juror misconduct. A judge's decision to hold a hearing to investigate

B.

Wilson next claims that, during her cross-examination, Vermont Castings asked questions which implied she negligently operated the stove. Wilson also claims that Vermont Castings's closing argument implied she was negligent. She claims this was a violation of Pennsylvania law, which prohibits a defendant from arguing in a strict products liability suit that the plaintiff was negligent. See Childers v. Power Line Equip. Rentals, Inc., 681 A.2d 201, 207 (Pa. Super. Ct. 1996).

Wilson has failed to preserve this claim for appeal because Wilson's counsel did not object to Vermont Castings's cross-examination of Wilson or its closing argument.6 As this Court has previously noted, "a party who fails to object to errors at trial waives the right to complain about them following trial." Waldorf v. Shuta, 142 F.3d 601, 629 (3d Cir. 1998); see also Grace v. Mauser-Werke GMBH, 700 F. Supp. 1383, 1388 (E.D. Pa. 1988) (objections not raised at trial are waived).7

_____

alleged juror misconduct is reviewed for an abuse of discretion. See United States v. Davis, 60 F.3d 1479, 1483 (10th Cir. 1995). Because the contents of the manual related solely to defect, and because the court could not inquire into the subjective effect of the manual on the jury, a hearing would have been futile. See id. at 1484.

6. We also note that Wilson did not object to the jury instruction that stated that evidence of Wilson's conduct, although not relevant to defect, was relevant to causation. Nor did Wilson request her own instruction regarding the relevance of her conduct.

7. Before trial, Wilson's counsel filed a motion in limine to exclude evidence that Wilson negligently operated the stove. The district court denied the motion to the extent it sought to bar Vermont Castings "from using evidence of [Wilson's] conduct to argue that her conduct, not the alleged defect caused her clothing to catchfire." Appellant's App. at 36 (order granting in part and denying in part parties' motions in limine). The court stated, however, that Vermont Castings would not be permitted to characterize Wilson's conduct as negligent or argue that Wilson's errors absolved them of liability. See id. Because Wilson prevailed on the motion in limine to limit Vermont Castings's arguments, her counsel had an obligation to renew his objection once he thought Vermont Castings violated this ruling. Cf. Virgin Islands v. Joseph, 964

7

This Court has recognized an exception to waiver when "counsel fail[s] to object to a fundamental and highly prejudicial error resulting in a miscarriage of justice." Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992). Upon reviewing the record, we find no miscarriage of justice.

Under Pennsylvania law, causation is an essential element of a strict products liability claim. See Charlton v. Toyota Indus. Equip., 714 A.2d 1043, 1046 (Pa. Super. Ct. 1998). Although a defendant cannot argue that a plaintiff was negligent, see Childers, 681 A.2d at 207, a defendant can argue that the plaintiff 's conduct, not the alleged defect, was the sole cause of her injuries. See Charlton, 714 A.2d at 1047; Madonna v. Harley Davidson, Inc., 708 A.2d 507, 508 (Pa. Super. Ct. 1998).

In this case, Wilson's own counsel elicited the evidence surrounding Wilson's actions to demonstrate what occurred on that day. Vermont Castings merely cross-examined her on these events. Nor did Vermont Castings argue that Wilson was negligent; rather, it argued that Wilson's conduct, not the alleged defect, was the sole cause of the accident. Thus, Vermont Castings's questions and arguments based on this evidence were consistent with Pennsylvania law and did not result in a miscarriage of justice.

III.

We conclude that the juror's misconduct in this case did not prejudice Wilson. We also conclude that Wilson failed to preserve for appeal her argument that Vermont Castings

_____

F.2d 1380, 1384-85 & n.3 (3d Cir. 1992) (defendant preserved issue for appeal when motion in limine denied and he failed to object at trial; contrasting situation where a defendant prevails on motion in limine and fails to object at trial when that ruling is violated) (citing United States v. Roenigk, 810 F.2d 809, 815 (8th Cir. 1987)); see also Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1229 (8th Cir. 1995) (" `An objection is required to preserve error when an opponent, or the court itself, [is claimed to have] violate[d] a motion in limine that was granted.' ") (quoting Roenigk, 810 F.2d at 815).

impermissibly accused Wilson of acting negligently. Even if she had preserved her argument, we conclude that Vermont Castings's arguments were permissible under Pennsylvania law. We therefore affirm the decision of the district court.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

9