**Dorothy L. RAYBURN, et al., Plaintiffs,**

v.

**BELL HELICOPTER TEXTRON, INC., et al., Defendants.**

**No. Civ.A. 94–1818.**

United States District Court, E.D. Pennsylvania.

Nov. 29, 1999.

Eugene Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Michelle S. Stecyk, individually, as Executrix of the Estate of Anthony J. Stecyk, Jr., and on behalf of Anthony L. Stecyk, a minor, plaintiff.

Thomas R. Harrington, Patrick J. O'Connor, Ann T. Field, Cozen & O'Connor, Philadelphia, PA, for Bell Helicopter Textron, Inc., defendant.

Ralph G. Wellington, James D. Shupe, John K. Gisleson, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for General Motors Corporation, movant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

The present actions are two of four consolidated diversity actions that arose out of the crash of an experimental V–22 Osprey aircraft during a ferry flight near Quantico, Virginia on July 20, 1992. The accident killed seven people, including two who worked for Boeing Vertol Company ("Boeing") and on whose behalf the present actions are being prosecuted. The defendants are: (1) Bell Helicopter Textron, Inc. ("Bell"), the contractor who worked with Boeing and the United States Government on the development of the Os-

prey; (2) the Allison Gas Turbine Division of General Motors, Inc. ("GM"), who contracted with the Government to develop and build the engine and its related parts for the Osprey; and (3) Macrotech Fluid Sealing ("Macrotech"), the manufacturer of a seal which was allegedly installed incorrectly on the plane that crashed. Each of the four cases proceeded on the theory that the defendants' negligence caused the crash. Prior to trial, two of the four plaintiffs settled—one for $1.5 million and the other for $1.1 million [1]. The two instant plaintiffs, Kathleen K. Mayan ("Mayan") and Dorothy L. Rayburn ("Rayburn"), individually and as administratrix of the estates of their husbands, proceeded to trial. On April 27, 1999, after a five week trial, the jury returned a defense verdict.

Plaintiffs now seek an evidentiary hearing to determine whether any jurors read or were exposed to information contained in an article published in the Philadelphia Inquirer after closing argument but before the verdict was returned referring to the availability of workers' compensation benefits to plaintiffs.[2]

In support of its request for a post verdict questioning of the jurors [3], plaintiffs allege that after closing arguments on Friday, April 23, 1999 but before jury deliberations commenced on Monday, April 26, 1999, the Philadelphia Inquirer published a ten paragraph article on Saturday, April 24, 1999, which summarized the facts of the case and counsel's closing arguments delivered to the jury the prior date. The eighth paragraph of the article, the offending paragraph according to plaintiffs, read:

> "The seal, all parties agree, had been installed backwards. Boeing which was responsible for the aircraft's maintenance is not a defendant because Pennsylvania workers' compensation statute prevents families of employees covered by the law from suing for extra damages."

Plaintiffs allege that the reference in the article to workers compensation was prejudicial. However, plaintiffs do not point to any evidence that any juror actually read or was exposed to the content of the article or that the content of the article in any way was injected into the jury's deliberations.

We begin with the general rule that a juror's testimony is not admissible to impeach a jury verdict. *See, e.g., Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 148 (3d Cir.1975). "The purpose of this rule is to promote finality of verdicts, encourage free deliberations among jurors, and maintain the integrity of the jury as a judicial decision-making body." *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 394 (3d Cir.1999) (*citing Gereau*, 523 F.2d at 148). An exception to the rule

---

**1.** *See Stecyk v. Bell Helicopter Textron, Inc.*, 53 F.Supp.2d. 794 (E.D.Pa.1999) (deciding proper allocation and distribution of settlement proceeds).

**2.** Before the court is also plaintiffs' motion for a new trial pursuant to Federal Rule of Civil Procedure 59. Plaintiff argues that this court should grant a new trial for the following reasons: (1) it was prejudicial error to admit evidence of the results of tests conducted by defendants because the test conditions were not substantially similar to the actual conditions to which the 617 seal was subjected; (2) it was prejudicial error to admit testimony regarding the possibility of a hydraulic leak as an alternative theory explaining the cause of the crash; (3) it was prejudicial error to ex-

clude the testimony of Richard Murray, a Bell design engineer, regarding the use of a bi-directional seal in subsequent designs of the Osprey; and (4) the jury's findings of no negligence on the part of any defendant is not only unsupported by adequate evidence, but also is contrary to the overwhelming weight of the evidence. For essentially the reasons stated on the record during trial, the court finds no merit to the motion.

**3.** Because plaintiffs saw defense counsel speaking with the Philadelphia Inquirer reporter who authored the subject article, plaintiffs also wish to examine defense counsel at the hearing to determine what counsel told the reporter.

that a juror's testimony is not admissible to impeach a jury verdict is triggered when the jury has been exposed to an "extraneous influence." *Tanner*, 483 U.S. at 117, 107 S.Ct. 2739 (further citations omitted). The general rule and the exception are codified in Rule 606(b) of the Federal Rules of Evidence. The Rule provides, in relevant part:

> Upon an inquiry into the validity of a verdict ... a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror....

Fed.R.Evid. 606(b). The scope of the court's inquiry under Rule 606(b) is limited. While the court may inquire about an exposure to extra-record information, it may not inquire about the subjective effect of any extraneous information on the jurors. *See Wilson*, 170 F.3d at 394.

The Third Circuit has cautioned that "[j]urors who complete their service should rarely, if at all, be recalled for [evidentiary hearings]. It is qualitatively a different thing to conduct a voir dire during an ongoing proceeding at which the jury is part of the adjudicative process than to recall a jury months or years later for that purpose." *Id.* at 98. The Third Circuit recognized that as a matter of public policy post verdict investigations into juror misconduct, while in some cases may lead to the invalidation of verdicts reached after improper juror behavior, could seriously undermine the jury system and seriously disrupt the finality of the process. *Id.* This is especially true when " '[a]llegations of juror misconduct, incompetency, or inattentiveness [are] raised for the first time days, weeks, or months after the verdict.' " *Id.* (*quoting Tanner*, 483 U.S. at 120, 107 S.Ct. 2739).

 In this case, even assuming that the content of the article was prejudicial[4] to plaintiff, an evidentiary hearing is unwarranted for three reasons. First, plaintiffs have failed to point to any evidence that any juror read or was exposed to the content of the article before reaching a verdict. An uninformed hunch that a press report may have been read by any juror, and that in turn it had an allegedly prejudicial effect on that juror is insufficient to overcome the strong public policy against reassembling a jury after completion of their service. *See, e.g., Tanner v. United States*, 483 U.S. 107, 113, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (hearing ordered *after* defendant presents an affidavit describing alleged misconduct of several jurors during trial); *Wilson v. Vermont Castings, Inc.*, 170 F.3d 391, 393–94 (3d Cir.1999) (hearing held *after* plaintiff

4. The Third Circuit has adopted a three-step procedure to determine whether publicity during the course of trial has tainted or prejudiced the jury. *See Waldorf v. Shuta*, 3 F.3d 705, 709 (3d Cir.1993). "First, a court determines whether the news coverage is prejudicial. Second, if it is, the court determines whether any jurors were exposed to the coverage. Third, if exposure did occur, the court examines the exposed jurors to determine if this exposure compromised their impartiality." *Id.* at 709–10 (further citations omitted). While the court need not address this three-step procedure because it concludes that an evidentiary hearing is unwarranted in this case, the court notes that there is real doubt whether the article at issue was prejudicial. The article stated that "Boeing which was responsible for the aircraft's maintenance, is not a defendant because Pennsylvania's workers' compensation statute prevents families of employees covered by the law from suing for extra damages." It is difficult to understand how a statement regarding the workers' compensation statute prejudiced the jury's findings that the defendants were not negligent. At most, the workers' compensation reference may have had some relevance to the question of damages, a question never reached by the jury since it determined the defendants were not negligent.

shows that a juror informed plaintiff's counsel of potential juror misconduct); *United States v. Pelullo*, 105 F.3d 117, 126 (3d Cir.1997) (hearing held *after* defendant shows that a particular juror had not honestly answered a series of questions during voir dire); *United States v. Gilsenan*, 949 F.2d 90, 97 (3d Cir.1991) (hearing held *after* defendant presents affidavit from a juror describing potential misconduct); *United States v. Youngblood*, 56 F.Supp.2d. 518, 521 (E.D.Pa.1999) (hearing held *after* defendant proffers evidence that a juror reported potential misconduct of other jurors to defense counsel). *Waldorf v. Shuta*, 3 F.3d 705, 709 (3d Cir.1993), a case where the court held an evidentiary hearing based on reports that a juror watched media coverage of the trial, is distinguishable in that the inquiry into the press report occurred during the trial and before the jury returned a verdict. Therefore, in *Waldorf*, the court did not have to decide whether on the basis of the allegation of misconduct it would have called back the jury after dismissal from service.

■ Second, recalling the jury in this case is particularly inappropriate because counsel was aware of the publication of the Inquirer article *before* the verdict was returned but failed to advise the court of his concerns.[5]

It would be fundamentally unfair and injurious to the public interest to permit a party, whose counsel is aware of alleged juror misconduct during the trial, to "gamble on a favorable verdict by remaining silent, and then complain in a post verdict motion that the verdict was prejudicially influenced by that misconduct." *United States v. Stanfa*, No. 94–127–01, 1996 WL

368967, at *5 (*quoting United States v. Bolinger*, 837 F.2d 436, 438 (11th Cir. 1988)). This court will not countenance this type of gamesmanship.

Thirdly, recalling the jury at this time also runs counter to the well settled proposition that the jury is presumed to have followed the court's instruction. At the outset of the trial, the trial judge specifically cautioned the jury against reading or watching any press reports concerning the case:

"One additional matter that I wanted to remind you of. It may be that during the course of the trial and I don't know whether it will or not, but it could be that there would be some report in the press or somewhere else, television, radio or something about the case. Please remember instructions to you and it's a very serious matter, do not read or hear anything whatsoever concerning the case."

N.T. Vol. 1 at 138.

Again at the end of closing statements, on the day immediately prior to the publication of the Inquirer article, the court again specifically instructed the jury against reading any news reports of the trial:

"Additionally, I had mentioned to you at the outset of the case and I just wanted to repeat it now, because it's a particularly sensitive time, that if there is anything by way of press coverage of the case, and I have no idea whether or not there will be, but just in the event there is, you are again instructed that you are not to read or listen to it or watch, as the case may be, anything to do with the

---

**5.** In their moving papers in support of the motion for a new trial, plaintiffs did not assert when they or counsel first became aware of the publication of the accused article. At oral argument, however, New York trial counsel agreed that Philadelphia's associate counsel of record must have been aware of the publication of the article before the verdict was returned. Of course, knowledge by Philadelphia counsel is imputed to New York trial counsel. Moreover, at oral argument, trial counsel also acknowledged that he became aware of the publication of the article the date the verdict was returned, although he could not recall whether this happened immediately before or immediately after the verdict was returned. In any event, plaintiff's counsel was afforded the opportunity to speak to the jurors after the verdict was returned and in fact he acknowledged at oral argument that he did so but did not ask the jurors to whom he spoke whether they had read or been exposed at all to the allegedly prejudicial article.

case. Again, I have no idea whether that will happen but I wanted to remind you."

The court will not presume that the jury disregarded its clear and timely instructions.

For all of these reasons, the court declines to hold an evidentiary hearing to question the jurors whether they read or were exposed to the content of the Inquirer article.

An appropriate amended order follow.

### AMENDED ORDER

**AND NOW,** this **29th** day of **November, 1999,** it is hereby **ORDERED** that plaintiffs' motion for a new trial and for an evidentiary hearing is **DENIED.**[6]

---

**6.** Although this court previously entered an Order denying plaintiffs' motion, *see* Order dated November 11, 1999, this amended order is simply intended to clarify that both plaintiffs' motion for a new trial *and* plaintiffs' request for an evidentiary hearing are denied.