Pablo SUAREZ, Jr., Plaintiff,

v.

Dr. Thomas MATTINGLY, Dr. Joseph V. Zappasodi, Defendants.

Civil Action No. 91–3002.

United States District Court, D. New Jersey.

Aug. 1, 2002.

John C. Connell, Archer & Greiner, Haddonfield, NJ, for plaintiff.

Thomas F. Marshall, Marshall & Manion, Esqs., Mount Holly, NJ, Steven David Wallach, Princeton, NJ, for defendants.

ORDER

RODRIGUEZ, District Judge.

## I.

### INTRODUCTION

This matter is before the Court on plaintiff's motion for a new trial pursuant to Fed.R.Civ.P. 59. The Court has considered the written submissions of counsel, including further argument and briefing on the post-trial issue of a suspected jury breach.

Plaintiff contends that a new trial should be granted because: (1) the verdict of no cause for action was against the weight of

the evidence; (2) plaintiff's counsel suspects that the jury may have received extraneous prejudicial information or was subjected to some outside influence.

This action was brought pursuant to 42 U.S.C. § 1983 for violations of the plaintiff's Eighth Amendment rights. Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider claims arising under state common law because each such claim arises out of the same nucleus of operative facts as those that give rise to plaintiff's federal claims.

## BACKGROUND

The chronology of this case is both factually and procedurally complex. The substantive facts developed during the trial were essentially in keeping with the facts as discussed in the many previous Orders and Opinions of this Court where it was determined that the disputed facts required jury consideration. As a result, without benefit of transcripts, this Order will focus on the factual disputes that were presented to the jury.

This action was originally instituted on July 2, 1991 by the filing of a complaint prosecuted by the plaintiff *pro se.* At all relevant times, plaintiff was an inmate at Riverfront State Prison ("RSP"). The originally named defendants included: Thomas E. Hundley, Superintendent at RSP; Ruben Washington, Kitchen Supervisor at RSP; Dr. Thomas Mattingly, Medical Director at RSP; and New Jersey State Department of Corrections ("DOC"). The complaint attempted to state a cause of action sounding in common law tort for professional medical negligence supplemental to a claim of violation of civil rights under the Eighth Amendment pursuant to 42 U.S.C. § 1983, arising from an untreated right navicular fracture suffered by plaintiff. The individual defendants were

at all times relevant hereto employed by the New Jersey Department of Corrections and at all times relevant hereto were acting as the agents, servants, and employees of the New Jersey Department of Corrections. They were sued individually and in their official capacities.

The defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on August 12, 1991, which was granted on November 19, 1991. Subsequently, on January 9, 1992, plaintiff filed a motion to reopen the case which was construed by the Court as a motion for relief under Fed.R.Civ.P. 60(b)(6). The motion to reopen the case was granted on February 28, 1992.

On March 20, 1992, plaintiff filed a motion requesting the appointment of counsel pursuant to 28 U.S.C. § 1915(d), which was granted on June 12, 1992.

After a series of motions to dismiss were heard, the Court dismissed the claims against the New Jersey State Department of Corrections and Ruben Washington.

Following a March 29, 1995 deposition of Joseph V. Zappasodi, D.O., plaintiff moved for leave to file a third amended complaint which substituted Dr. Zappasodi as a named defendant who had now been identified as plaintiff's treating physician in June 1988.

A new series of motions followed the naming of Dr. Zappasodi, including a hearing with respect to the bar of the statute of limitations asserted by Dr. Zappasodi.

The case proceeded to trial on December 3, 2001 and was concluded on December 14, 2001.

At an in limine proceeding plaintiff voluntarily dismissed his (1) claims of negligent and intentional infliction of emotional distress, (2) claims for violation of a statutory duty of reasonable care; (3) claims for equitable relief, and (4) claims against the

remaining fictitiously named defendants. The Court also barred any argument or evidence pertaining to comparative negligence, ruling that plaintiff's conduct played no role in the question of whether the conduct of the defendant physicians was actionable for professional medical negligence. The Court did permit argument and evidence concerning plaintiff's conduct pertaining to medical compliance with instructions as implicating the issue of mitigation of damages.

At the close of the evidence, the Court granted defendants' motion for judgment as a matter of law on plaintiff's (1) claims for abandonment and (2) claims against defendant Estate of Hundley. The remaining claims of professional medical negligence, § 1983 deliberate indifference, and wanton conduct asserted against Drs. Mattingly and Zappasodi were submitted to the jury for decision. After 11 hours of deliberation over two days, the jury returned a verdict of no cause for action on all adjudicated claims.

### STANDARD FOR GRANTING A MOTION FOR NEW TRIAL

■ A motion for a new trial is generally governed by Federal Rule of Civil Procedure 59(a), which provides in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). A new trial will commonly be granted (1) when the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice, *Roebuck v. Drexel Univ.*, 852 F.2d 715, 717 (3d Cir.1988); (2) when improper conduct by an attorney or the court unfairly influenced the verdict, *Fineman v. Armstrong World Indus., Ind.*, 980 F.2d 171, 207 (3d Cir.1992); (3) when the jury verdict was facially inconsistent, *Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir.1996); or (4) where a verdict is so grossly excessive or inadequate "as to shock the judicial conscience," *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir.1989), *United States v. Stansfield*, 101 F.3d 909, 914 (3d Cir.1996) (upholding district court's denial of a motion for a new trial because the district court "enjoys considerable discretion in determining how to deal with allegations of juror misconduct"). Whether a new trial is granted is left to the sound discretion of the trial court, *Wagner v. Fair Acres Geriatric Center*, 49 F.3d 1002, 1017 (3d Cir.1995).

### II.

### NEW TRIAL MAY NOT BE GRANTED BECAUSE JURY VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE

■ Plaintiff contends that the jury verdict was against the weight of the evidence. The grant of a new trial because the verdict is against the weight of the evidence is only appropriate when "the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir.1999) (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991)). This standard serves to prevent usurpation of the jury's prime function as the trier of fact and ensures that the "district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir.1992) (quoting

*Lind v. Schenley,* 278 F.2d 79, 90 (3d Cir.1960)).

As anticipated, and consistent with the long history of this case, the medical proofs were in sharp conflict.

*As to Dr. Mattingly*

Plaintiff argues that there was ample evidence for a jury to find that Dr. Mattingly deviated from the accepted standards of care, was deliberately indifferent and guilty of willful, wanton and reckless conduct when he did not properly treat a right navicular fracture which plaintiff claims occurred on June 2, 1988. However, the defense expert testified that Dr. Mattingly was not liable because the fracture predated the 1988 fall and plaintiff's minimal post-injury pain corroborated the presence of an acute sprain of a preexisting fracture bound by a noncalcified fibrous union, rendering further treatment for a fracture unnecessary. In addition, the jury apparently accepted Dr. Mattingly's denial that he improperly removed plaintiff's cast on July 3, 1990. Also, there was evidence from which a jury could conclude that Dr. Mattingly took appropriate steps to medicate and refer plaintiff for orthopedic consultations. Clearly, a jury question was presented as to the nature of the injury and to the care given. The jury also had the voluminous medical record available to assist them in their credibility determinations.

*As to Dr. Zappasodi*

Here again, the facts were in serious dispute and plaintiff argues that "In the absence of any objective medical evidence, there is no evidentiary basis for a finding that the injury occurred before 1988. But if so, then both defendants confronted a non-union. In turn, the testimony concerning the standard of medical care for a non-union offered by Drs. Termanini (ace bandage appropriate given probable fibrous union; surgical repair not appropriate) and Cristini (surgical repair appropri-

ate; timing depended on complaints of pain) was in conflict, and as such would not and could not support identical findings of no liability." (Plaintiff's post-trial letter dated January 24, 2002.)

The defendant advances the argument that the jury could have found, based on Dr. Zappasodi's testimony and the medical records, that if plaintiff experienced pain and reported it to Dr. Zappasodi it would have been reflected in the medical records and he would have received treatment as he did for all the other complaints of pain. In addition, if the jury believed the testimony of the three medical experts who testified they could, in measuring credibility, find that a recent fracture of the navicular bone would cause pain for two to three months and would evidence pain if one played sports. They also had before them the testimony of the plaintiff indicating that he played sports every day within several weeks of the alleged fracture on June 2, including suffering a baseball injury on June 28 without reporting wrist pain.

Finally, defendant points out that the medical records show that plaintiff was treated over 40 times in the year following the alleged fall in June 1988, and demonstrate that plaintiff reported many major and minor body pains and received treatment and medication as well as referrals to specialists. The defendant testified that there is no reason to believe that he would not have treated plaintiff for a wrist pain if one was reported by plaintiff after June 1988.

When there is a conflict in medical opinions, it is appropriate and the unique function of the jury to follow and accept the opinion it finds more persuasive. Here, the jury heard the witnesses, had extensive medical records before them, and took approximately eleven hours to deliberate and resolve the conflict.

The Court finds that there was ample evidence to support the jury's verdict in this case. Indeed, the case turned on expert testimony and the credibility of the witnesses.

## III.

## NEW TRIAL MAY NOT BE GRANTED BASED ON ALLEGED JURY BREACH

█ Plaintiff's counsel also suspects that the jury may have received extraneous prejudicial information or was subjected to some outside influence.

## BACKGROUND

Judgment was entered against the plaintiff on December 18, 2001. On December 20, 2001, the plaintiff's attorney received a voice-mail message from an independent attorney not previously affiliated with the case. The attorney left a rather vague message stating that he had information that might be "interesting" in connection with the case that had been tried the previous week in federal court. The attorney stated that one of the jurors from the trial had "reached out" to him and was considering whether or not to make a "factual representation that you might think important" regarding a possible motion for a new trial.

Plaintiff's attorney, of course, had not solicited this information. When he contacted the attorney on December 21, 2001, however, he was told that the juror was not yet certain as to whether or not to come forward. He stated that the juror wanted to take time over the holidays to consider what course of action to take.

To date, the information that the unidentified juror was considering revealing is not known by either plaintiff's attorney or this Court. Since the date of that conversation, plaintiff's attorney has been unsuccessful in his attempt to contact the attorney and, in compliance with court rules, has not attempted to contact any juror who served at the trial. In essence, plaintiff now requests that the Court pursue this matter.

## DISCUSSION

Plaintiff requests that an inquiry be made as to the validity of the verdict entered in this case because of unknown "interesting" information regarding a possible jury breach. Plaintiff's attorney suggests that this Court should pursue the matter to determine whether the information alluded to had a prejudicial effect on the jury and its ability to render a competent verdict.

Federal Rule of Evidence 606(b) will not permit inquiry into the internal deliberations of the jurors. *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). Rather, the Rule provides,

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

The Court is hesitant to grant plaintiff's request under the circumstances present-

ed. The comment is ambiguous and was not presented to the Court; rather, the possibility of its existence was conveyed to plaintiff's counsel by way of a voice-mail message. No specific information was given. The attorney stated only that he had information that might be "important [ ] in connection with [ ] a new trial motion." Plaintiff has offered no evidence that would warrant further investigation or the granting of a new trial.

According to Federal Rule of Evidence 606(b), an inquiry into the validity of a verdict may only be conducted under two conditions: (1) when extraneous prejudicial information has been brought to the jury's attention; or (2) when an outside influence was improperly brought to bear upon any juror. Fed.R.Evid. 606(b). Inquiry is not permissible when the information regards jury deliberations or related to how the jury arrived at its verdict. *Id.*

It is well-settled that a juror is not permitted to impeach his or her own verdict once the jury has been discharged. *McDonald v. Pless,* 238 U.S. 264, 267, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Keeping this rule in place throughout the course of the past century has furthered certain public policy concerns, including: "(1) discouraging harassment of jurors by losing parties eager to have the verdict set aside; (2) encouraging free and .open discussion among jurors; (3) reducing incentives for jury tampering; (4) promoting verdict finality; [and] (5) maintaining the viability of the jury as a judicial decision-making body." *Government of the Virgin Islands v. Gereau,* 523 F.2d 140, 148 (3d Cir.1975) (citations omitted).

In order for the justice system to function properly, there must be a decisive end to litigation. *See* Fed.R.Evid. 606(b) advisory committee's notes. If a juror were allowed to freely impeach his or her verdict, there would be no finality to the verdict. *Id.* Any party dissatisfied with the outcome of his or her trial could easily seek out a juror to persuade, harass, or even compensate to compel the juror to return to the court to question the verdict. Therefore, the codification of Federal Rule of Evidence 606(b) preserves the finality of a jury verdict by allowing investigation in only a few excepted cases. Notably, this rule does not allow for inquiry into the verdict when the problem is of an intra-jury nature. That is, the verdict must be left unquestioned when the concern is about the jury's deliberations, emotional reactions, mental processes, or similar matters. Fed.R.Evid. 606(b). The validity of a verdict may only be challenged where there is evidence of extraneous prejudicial information or an outside influence which may have affected the jury in its ability to render a verdict. *Id.*

1. *Intrinsic Jury Influence*

Where the problem is an intra-jury issue, courts have consistently held that the sanctity of the jury's verdict should not be disturbed. *See* Fed.R.Evid. 606(b). *See also Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (finding that evidentiary hearing regarding juror's drug and alcohol use was barred by Federal Rule of Evidence 606(b) which prohibits juror impeachment of verdict); *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300 (1915) (holding that jurors may not impeach their own verdict after the trial and stating that if inquiry into internal jury dialogue was permissible, the "frankness and freedom of discussion" of juror deliberations would be destroyed); *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (stating that jurors may not testify regarding to any motives which affected their internal deliberations); *U.S. v. Richards,* 241 F.3d 335, 343–344 (3d Cir.2001) (where the question was of an intra-jury influence, district court's denial of a motion

for a new trial was upheld); *Government of the Virgin Islands v. Nicholas,* 759 F.2d 1073, 1075 (3d Cir.1985) (holding that defendant was not entitled to post-conviction relief even if a juror was unable to hear part of trial due to a hearing problem, because the juror was incompetent to testify as to any effect his problem had on his ability to render the verdict).

If it were acceptable for a juror to impeach his or her verdict, there is a strong likelihood that defendants would regularly file motions for a new trial based on some type of juror discrepancy. *See Nicholas,* 759 F.2d at 1078–79 (citations omitted). There would be no clear end to the trial process due to the potential to upset every trial verdict. *Id.*

No evidence has been presented in this case that the "information" that the juror holds pertains to an intrinsic jury issue. If the juror's "interesting" information involves an intrinsic jury issue, it is clear that the matter may not be pursued further because both case law and Federal Rule of Evidence 606(b) prohibit inquiry into the verdict in cases where the concern is of an intra-jury nature.

### 2. *Extrinsic Jury Influence*

Additionally, there is no evidence in this case of either extraneous prejudicial information or an outside influence having an effect upon the jury. This Court is therefore not required to examine the soundness of the jury's decision.

Federal Rule of Evidence 606(b) provides that in an inquiry into the validity of a verdict, a juror may only testify regarding either extraneous prejudicial information that was brought to the attention of the juror or an outside influence that affected the juror. Fed.R.Evid. 606(b). If there is reason to believe that a juror has been subjected to prejudicial information, the trial judge is required to conduct an investigation. *United States v. Vento,* 533 F.2d 838, 869–70 (3d Cir.1976). However, when no foundation for the allegations has been established, the trial judge is under no obligation to inquire into the matter. *Id.*

Moreover, a district court's decision to deny a motion for a new trial has been upheld even where the information is known. *See Wilson v. Vermont Castings,* 170 F.3d 391 (3d Cir.1999) (holding that even though extraneous information was introduced to the jury, it was not prejudicial and therefore the plaintiff was not entitled to a new trial); *Government of the Virgin Islands v. Gereau,* 523 F.2d 140, 153 (3d Cir.1975) (holding that a jury verdict may not be set aside simply due to rumors that had circulated because if such rumors were "sufficient to impeach the jury verdict, jury tampering and harassment would be encouraged").

Additionally, when considering whether to investigate a jury's finding, the following must be considered:

> Any attempt to impeach a jury verdict initially encounters two evidentiary obstacles: (1) producing evidence competent to attack the verdict, and (2) establishing the existence of grounds recognized as adequate to overturn the verdict. And even where both obstacles are cleared, there must be a finding that the party seeking to impeach the verdict has suffered prejudice from the misconduct of the jury.

*Gereau,* 523 F.2d at 148.

Here, the plaintiff has produced no evidence which would lay a foundation upon which to base a claim of any improper conduct.

The plaintiff's assertions have failed to go beyond the first evidentiary encumbrance discussed by the Third Circuit. No evidence has been produced; therefore, it cannot be determined whether the evidence in question would be strong enough

to overturn the verdict. Even if the plaintiff were to produce competent evidence sufficient to impeach the verdict, he would still have to demonstrate that he was prejudiced by the misconduct in order for the verdict to be overturned.

Although plaintiff's counsel cites a variety of cases in asserting that an investigation must be conducted,[1] these cases are distinguishable. In each case, the nature of the breach was known. Here, counsel has concluded that the information supplied requires inquiry. However, the information supplied is ambiguous and does not provide the foundation necessary to trigger an investigation. Some proof of extraneous or outside influence is required.

## CONCLUSION

Typically, a court allows inquiry into the validity of the verdict when a party establishes that the jury's verdict has been effected by the existence of evidence of either some extraneous prejudicial information or an outside influence. In addition, there must be a showing that the information had a prejudicial effect upon the verdict. In the present case, there is no indication as to the nature of the "information" referred to in the motion for a new trial. Furthermore, the "information" was not brought to the Court's attention by a juror, but rather by a previously uninvolved attorney who left a message on the plaintiff's attorney's voice-mail system claiming that a client had information "you might think important."

For this Court to allow an investigation under the circumstances would disregard the policy behind Federal Rule of Evidence 606(b) and would threaten the sanc-

tity of the jury verdict. This Court will not conduct an investigation unless a proper foundation has been established. To do so here could open the door for any losing party in the future to challenge an unfavorable verdict with only a whisper of impropriety.

Plaintiff has failed to show that either the jury verdict was against the weight of the evidence, or that the jury was subjected to extraneous prejudicial information or an outside influence, prompting an inquiry into the validity of the verdict.

Accordingly,

IT IS ORDERED on this 1st day of August, 2002 that the plaintiff's motion for a new trial is hereby **_DENIED._**

---

1. *See, e.g. United States v. Tucker,* 137 F.3d 1016 (8th Cir.1998)(outside influence indicated because juror discussed case with non-jury members); *United States v. Rowe,* 906 F.2d 654 (11th Cir.1990) (judicial inquiry justified where there was an allegation that the jurors had discussed improper information).