■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BARRY HORNEY, Respondent.—Order, Supreme Court, New York County (Frederic Berman, J.), entered April 19, 1984, which, after a hearing, set aside a jury verdict finding defendant guilty of assault in the second degree on the ground of juror misconduct (CPL 330.30 [2]) and ordered a new trial, unanimously reversed, on the law and on the facts, the verdict reinstated, and the case remanded for sentencing.

We do not believe that the several minor incidents alleged to constitute juror misconduct affected any substantial right of the defendant or impaired the ability of the jury to fairly and impartially assess the case wherein defendant, a transit police officer, was accused of beating the complainant into unconsciousness with his nightstick after apprehending him for theft of services.

The incidents in question were originally brought to light by one persistent juror (juror No. 2) who telephoned the defense counsel on the Sunday night following the Friday of the verdict to confess that he was "incapacitated" when he voted guilty and actually believed defendant to be innocent. Thereafter, defense counsel moved orally to set aside the verdict, and later brought this motion on papers which included affidavits of three jurors and one alternate alleging improprieties.

At this point the court correctly directed that a hearing be held to ascertain what actually transpired. (*People v Smith,* 59 NY2d 988.) At the hearing all 12 jurors and three alternates testified extensively. The testimony of the other jurors contradicted in the main the allegations made by the dissatisfied juror (juror No. 2) and accorded minimal significance to those of his allegations which were in some measure supported. Nevertheless, the trial court found that four distinct catego-

ries of prohibited activity did, in fact, transpire and held that the cumulative weight of these errors damaged defendant's right to a fair trial.

After a four-week long trial, the jury commenced deliberations on Tuesday, November 29, 1983 and was sequestered throughout the week until Friday afternoon, December 2, 1983, when it reached its unanimous guilty verdict.

The jury conscientiously deliberated during this extensive four-day period and by Thursday afternoon the complaining juror herein was the lone holdout for acquittal. By Friday afternoon he voluntarily assented to vote guilty and lucidly explained his reasons to his fellow jurors, admitting no reservations. He was not coerced nor was his vote a "cave-in" vote, according to the testimony of the jurors at the hearing. (This juror testified that he was physically and mentally exhausted, and hysterical and incapable of reaching a decision.) The forelady waited one-half hour more before announcing the verdict to insure his lack of reservation. Then, when polled by the court, neither did this juror nor any other express any reservations or hesitation.

Before specifically addressing the instances of misconduct found by the trial court, we must note some general principles which must guide a court in determining whether to set aside a jury verdict.

More than irregularities or an indiscretion of the jury alone warrant a new trial. "[I]t must be demonstrated that the fundamental right to a fair and impartial assessment of the facts [was] frustrated" by the alleged misconduct. (*People v Phillips,* 87 Misc 2d 613, 625, *affd* 52 AD2d 758, *lv denied* 39 NY2d 949.)

Moreover, the jurors themselves may not as a general rule impeach their own duly rendered verdict by statements or testimony averring their own misconduct. (*People v De Lucia,* 15 NY2d 294, *cert denied* 382 US 821, *on rearg* 20 NY2d 275.) As the court below properly noted, the finality of the jury verdict (CPL 310.80) will not be disturbed simply because a juror has a change of heart. (*See, People v Jacobson,* 109 Misc 2d 204.)

Against this background we examine the four errors which led the trial court to set aside the verdict.

### A. PREDELIBERATION COMMENTS

The first error relates to various predeliberation comments allegedly made by several jurors on different occasions. A

review of the record does not support the finding that many of these comments were actually made, or if made, were heard by other jurors. Most of the comments were testified to by juror No. 2 and one alternate juror. However, their testimony in that regard was contradicted by the testimony of the other jurors.

Even assuming that these comments were heard by the other jurors, as apparently found by the trial court, they were not lengthy discussions but merely terse asides. Moreover, these comments were not prejudicial in nature, as they did not indicate premature deliberations or sifting of facts, or any predetermined opinions based upon "outside influences". In the whole these comments related to tangential issues unrelated to the evidence. (*Cf. People v Marrero*, 83 AD2d 565.)

### B. DISCUSSIONS AT THE HOTEL

During the second night of sequestration at the hotel, two pairs of juror roommates held brief conversations regarding the case.

The first pair, who at the time were both for acquittal, briefly discussed some of the evidence and their hesitant feelings. However, it cannot be said that this discussion constituted prejudicial deliberations outside of the jury room. Both of these jurors still were for acquittal, and there were two more full days of deliberation before the verdict was reached.

The second pair included the complaining juror No. 2 and his roommate. However, the roommate testified that he refused to discuss the case and constantly reminded juror No. 2 about the Judge's admonition not to discuss the case. Only upon the juror's insistence did the roommate give in and suffer his continued conversation. He also briefly demonstrated an arm motion made by the victim, also at juror No. 2's insistence.

This limited demonstration is not the type of "test", "conscious, contrived experimentation", or re-creation of the crime which juries are prohibited from conducting (*People v Brown*, 48 NY2d 388; *see also, People v Smith*, 59 NY2d 988, *supra; People v Crimmins*, 26 NY2d 319; *People v De Lucia, supra*), nor was it directly material to a relevant issue at trial or prejudicial to the defendant. (*Supra.*)

### C. NEWSPAPER HEADLINE

A newspaper with a headline concerning the congressional

inquiry into police brutality was lying on a chair in the courtroom. During a break in the deliberations five jurors who walked past saw the headline. There is no claim that any of the jurors read the article, and only one, juror No. 2, claimed that the headline had any influence over him.

This publicity concerning general claims of police brutality, without any reference to defendant, cannot be deemed prejudicial. It has been held that the potential for prejudice from media publicity is most tenuous when it involves reports of similar crimes committed by other individuals, even members of a group associated with defendant. (*People v Moore,* 42 NY2d 421.) Moreover, defendant has not established that the jury deliberations were "poisoned" by this media publicity (*see, Irvin v Dowd,* 366 US 717).

### D. COURT OFFICER'S REMARK

The final alleged error was a remark made by a court officer to some of the jurors that the jury would be sequestered over the weekend if it could not reach a verdict by Friday. This comment was allegedly made on Wednesday. Again, there is minimal support in the record that the comment was actually made. Even if made, there is no indication that this comment had any coercive effect on the deliberations. First, this "outside influence" by the court officer was not related to the merits of the case (*cf. Parker v Gladden,* 385 US 363; *People v Ciaccio,* 47 NY2d 431). Second, the remark made two days before cannot be said to have directly coerced a rushed verdict made directly on the heels of the communication. (*Cf. People v Eadie,* 83 AD2d 773 [instruction at 11:00 P.M. that the jury would be sequestered for the night if it did not reach a verdict].)

In sum, defendant failed to meet his burden of proving that the alleged misconduct impaired his right to a fair and impartial trial and the trial court erred in setting aside the jury's verdict on such ground. Concur—Murphy, P. J., Ross, Carro, Lynch and Ellerin, JJ.