■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD HARDWICK, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Shea, J.), rendered November 12, 1986, convicting him of criminal possession of a controlled substance in the third degree, petit larceny, and official misconduct, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial,

after a hearing, of those branches of the defendant's omnibus motion which were to controvert a search warrant and to suppress physical evidence.

Ordered that the judgment is affirmed, and the case is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

At about 5:00 P.M. on October 24, 1985, three Brooklyn police officers responded pursuant to a radio transmission to a location where a burglary was reported to be in progress. There they found the defendant, then a New York City police officer assigned to the Brooklyn North Narcotics Division, who told them that while trying to assist someone who was being attacked, he himself was attacked by a group of people and had his gun stolen. The defendant was unable to describe his assailants except to state that two black males and one black female had been involved and that they had fled south towards Atlantic Avenue. The defendant was bleeding from his head and hands but declined medical assistance at the scene and instead chose to drive himself in his own automobile to the precinct. Upon his arrival, he told his fellow officers that he had been jumped by a group of people and that one of them had stolen his gun. He also added that during the course of the struggle, he had been hit over the head with a bottle. He was taken to a hospital by one of his fellow officers and received medical treatment for his wounds. He then returned to the precinct where he rested until 4:00 A.M. and then went home.

Following the attack the police apprehended one of the defendant's assailants, Robin Baker, who admitted assaulting the defendant with a bottle but stated that she did so in an effort to recover drugs and money which the defendant had stolen from her. Ms. Baker stated that she attacked the defendant with a bottle only after he refused to give her back her drugs, threatened to arrest her if she did not leave him alone, and drew his gun in an effort to escape. Ms. Baker led the police to one Courtney Primo, who was also involved in the assault on the defendant, and Mr. Primo confirmed Baker's story. The defendant's gun was later recovered from the third person involved in the assault, C. L. Calhoun.

At this point, Sergeant Rosario, who had been assigned to investigate the assault on the defendant, conferred with an Assistant District Attorney and pursuant to his advice, applied for a search warrant for the defendant's car. Sergeant Rosario informed the Judge about the defendant's assault, related that various bloodstained objects had been observed on

the front seat of the defendant's car and obtained a warrant to search defendant's car for "Human Blood items and items to which such Human Blood is attached", and "Broken Glass or Glass Particles". Sergeant Rosario, on the advice of the Assistant District Attorney, did not inform the issuing Magistrate of Baker and Primo's allegations because Rosario did not think he had probable cause to believe that their money and/or drugs would be found in the defendant's car.

Upon executing the warrant, the police not only recovered bloodstained items from the passenger compartment of the defendant's car, they also recovered a scale and a "coke user's kit," consisting of a razor blade, metal straw, and a mirror, from the glove compartment, and the defendant's bloodstained jacket which contained vials of "crack" and envelopes of cocaine from the trunk. Both the scales and kit, when analyzed, showed traces of cocaine. The defendant was subsequently arrested and charged with, *inter alia,* robbery in the first degree, criminal possession of a controlled substance in the third degree, and official misconduct. Those branches of the defendant's omnibus motion which were to controvert the search warrant and suppress physical evidence were denied.

At trial, the defendant maintained that the drugs which were recovered from the trunk of his car had been seized by him as evidence of crimes committed by Baker and Primo. In fact, the defendant stated that he was trying to effectuate their arrest when he was attacked by them and had his gun stolen. He claimed that his failure to report the attempted arrest or the seizure of narcotics and his failure to voucher the narcotics were attributable to the injuries he sustained as a result of the assault and his concern for the recovery of his gun. The defendant further testified that the "coke user's kit" was actually a testing kit which he had found in a desk drawer at the precinct and put into his car in case he ever had a use for it as an undercover officer.

The defendant was convicted of criminal possession of a controlled substance in the third degree, petit larceny and official misconduct. Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of the crimes charged *(see, People v Contes,* 60 NY2d 620). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]). Although the money which was stolen from Robin Baker and Courtney Primo was never recovered, there was ample circumstantial evidence from which the jury could

reasonably infer that the defendant had stolen the money. In addition, the petit larceny conviction could alternatively have been premised on a finding that the defendant stole narcotics from Robin Baker and Courtney Primo. That it was unlawful for Baker and Primo to possess the narcotics is no defense to the defendant's unlawful taking of them *(see, People v Dragone,* 96 Misc 2d 634; Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 155.00, at 104). We note that the "coke user's kit" which was recovered from the glove compartment of the defendant's car was properly admitted into evidence despite the fact that it constituted evidence of uncharged crimes since the defendant's intent was not readily inferable from his acts and this evidence created an inference of guilty knowledge with respect to the crimes charged *(see, People v Alvino,* 70 NY2d 233). Furthermore, the court did not err in allowing the defendant to be questioned regarding his failure to report the attempted narcotics arrest and seizure of narcotics. While ordinarily the jury would be precluded from drawing adverse inferences from a defendant's silence *(see, People v Allen,* 300 NY 222), here the defendant's silence was properly used against him since such silence was patently inconsistent with the defense asserted and he was under an obligation to speak *(People v Rothschild,* 35 NY2d 355; *see also, People v Conyers,* 52 NY2d 454).

Furthermore, we find that the defendant's motion to controvert the search warrant and suppress physical evidence was properly denied. The warrant, which was issued upon probable cause, gave the police the right to search every part of the defendant's car that might contain the object of the search *(United States v Ross,* 456 US 798, 821). That the police believed that there was a possibility that narcotics might also be recovered did not render the narcotics inadmissible at trial. The information possessed by the police regarding the narcotics at the time the warrant was issued did not amount to probable cause and the narcotics, which were discovered in plain view, were discovered inadvertently and thus were admissible in evidence *(see, Coolidge v New Hampshire,* 403 US 443, *reh denied* 404 US 874; *United States v Liberti,* 616 F2d 34, *cert denied* 446 US 952; *United States v Hare,* 589 F2d 1291; *People v Barber,* 113 Misc 2d 365).

Lastly, we note that the defendant was not denied a fair trial on account of the negative press coverage given during his trial to the police in the 77th Precinct who were then being accused of "shaking down" drug dealers. When polled, each of the jurors stated that they would not allow the news

reports which they had heard to influence their consideration of this case and each stated that he would base his determination of the defendant's guilt or innocence strictly on the evidence before him. The jury was instructed to avoid listening to any reports of the scandal then unraveling in the 77th Precinct. The defendant has failed to show that any juror formed an opinion based on the negative publicity. Absent such a showing, the defendant's argument must fail (see, *People v Agron,* 10 NY2d 130, 142, *cert denied* 368 US 922, *rearg denied* 27 NY2d 817; *People v Lynch,* 23 NY2d 262, 270-271). We additionally note that "the potential for prejudice from media publicity is most tenuous when it involves reports of similar crimes committed by other individuals, even where, as here, it involves groups associated with the defendant" *(People v Moore,* 42 NY2d 421, 433, *cert denied* 434 US 987; *cf., People v Horney,* 112 AD2d 841, *lv denied* 66 NY2d 615).

We have reviewed the defendant's remaining contentions and found them to be unpreserved for appellate review or without merit. Mangano, J. P., Thompson, Bracken and Spatt, JJ., concur.