**Keith BOWERS, Petitioner,**

v.

**James WALSH, Respondent.**

**No. 00–CV–6459L.**

United States District Court, W.D. New York.

July 22, 2003.

Keith Bowers, Fallsburg, NY, Pro se.

Darren Longo, Asst. Attorney General, NYS Attorney General's Office, Rochester, NY, for Respondent.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

Petitioner Keith Bowers ("Bowers") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Wyoming County Court on one count of Assault in the Second Degree. For the reasons set forth below, Bowers's § 2254 petition is dismissed.

### FACTUAL BACKGROUND

The Wyoming County Grand Jury returned an indictment on April 30, 1997 charging Bowers, then an inmate at Attica Correctional Facility, with two counts of second degree assault pursuant to New York Penal Law (P.L.) § 120.05(3) and § 120.05(7).[1] The charges stemmed from an April 15, 1997 incident in which Bowers allegedly assaulted Correctional Officer Joseph Orlowski ("Orlowski"), as he was passing through a security gate manned by Orlowski within the prison.

At Bowers's jury trial held September 29, 1997 to October 2, 1997 in Wyoming County Court (Dadd, J.), the People called Orlowski and three other correctional officers who witnessed the incident. The version of events that emerged based on the prosecution's witnesses was that Bowers jumped Orlowski, without warning or provocation, and repeatedly punched him and banged his head against the floor. Orlowski was unable to defend himself because he was attempting to maintain control of his prison key; it took three correctional officers to subdue Bowers. All of the officers testified that they did not witness

Bowers try to gain hold of Orlowski's key at any time during the altercation.

Bowers took the stand and testified that prior to the April 15th incident, various correctional officers had subjected him to physical and verbal harassment based on his race. However, he did not name Orlowski or any of the officers who testified at his trial as being responsible for the objectionable treatment.

According to Bowers, the altercation occurred when Orlowski made a movement towards him and caught his hand in Bowers's sleeve, causing the two of them to fall to the ground. Bowers claimed that he struck Orlowski in self-defense only after Orlowski began punching him.

Prior to closing arguments on October 1, 1997, defense counsel requested that the trial court *voir dire* the jury regarding their knowledge of a disturbance that occurred at Attica on the evening of September 30, 1997 in which some inmates assaulted several correction officers in the mess hall. The court denied counsel's request to question the jury, finding that the altercation was too remote in time, not especially serious compared to other incidents that routinely occur at Attica, and involved neither the defendant nor anyone related to him. The court determined that questioning the jury would be counterproductive in that it would tend to overstate the incident's importance.

During jury deliberations, the jury made several requests of the trial judge, including the re-reading of Bowers's testimony in its entirety and an explanation of intent. Later that day, the jury informed the court that it was deadlocked and the jury

---

1. Following oral argument on defendant's pre-trial omnibus motion on June 20, 1997, the trial court dismissed the count of the indictment charging him with assault under P.L. § 120.05(7). Petitioner's Appellate Division Brief ("Pet'r App. Div. Br.") at 3, Exhibit ("Ex.") L to Respondent's Answer. Citations herein to "Ex." refer to the exhibits attached to Respondent's Answer ("Resp't Ans.").

was excused for the evening. The following afternoon, after further deliberations, the jury returned a verdict of guilty.

At the sentencing hearing on November 24, 1997 the court heard oral argument on defendant's motion to set aside the verdict and for a new trial pursuant to New York Criminal Procedure Law ("C.P.L.") § 300.30(2) and § 330.50(2)[2] based on the jury's alleged consideration of the newspaper articles concerning the September 30th Attica incident. Justice Dadd denied the motion from the bench, holding that since the defense had not shown any juror misconduct, a hearing was not required. The judge sentenced Bowers to a determinate sentence of 7 years to be served consecutively with his present robbery sentence.

## PROCEDURAL HISTORY

Through counsel, Bowers appealed his conviction to the Appellate Division, Fourth Department on November 26, 1997. Appellate counsel's brief set forth two grounds for reversal: (1) that there was legally insufficient evidence to establish that Bowers intended to interfere with Orlowski's performance of his duties, and (2) that the trial court improperly denied his C.P.L. § 330.30 motion without a hearing. *See* Pet'r App. Div. Br., Ex. L. Bowers submitted a *pro se* supplemental brief, arguing that (1) the People "knowingly presented perjured testimony before the Grand Jury and/or at trial"; (2) the verdict was against the weight of the evidence; (3) he was "deprived of his constitutional right to cross-confrontation (sic)"; and (4) he

was denied "his constitutional right to a fair trial and/or effective assistance of counsel; (sic) due to cumulative effective errors." *See* Petitioner's Supplemental Appellate Division Brief ("Pet'r Supp. Br."), Ex. N.

The Appellate Division unanimously affirmed his conviction in a memorandum opinion entered December 30, 1999. *People v. Bowers*, 267 A.D.2d 1052, 700 N.Y.S.2d 785 (4th Dept.1999). The Court of Appeals denied leave to appeal on March 28, 2000. *People v. Bowers*, 94 N.Y.2d 916, 708 N.Y.S.2d 356, 729 N.E.2d 1155 (2000).

This federal habeas petition followed.

## DISCUSSION

### *Exhaustion*

Before seeking a writ of habeas corpus in federal court, Bowers must have exhausted all available state remedies either on direct appeal or through a collateral attack of his conviction. 28 U.S.C. § 2254(b); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). The exhaustion of state remedies requirement means that Bowers must have presented his constitutional claim to the highest state court from which a decision can be obtained. *See Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir.2000) (citing *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991)). To properly exhaust a claim, Bowers must have fairly apprised the state court of the claim's federal nature and of

**2.** C.P.L. § 330.30(2) provides as follows: "At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds: ... (2) That during the trial there occurred, out of the presence of the court, improper conduct by a juror, or im-

proper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict[.]" C.P.L. § 330.50(2) mandates that the trial court order a new trial if it sets aside the verdict pursuant to C.P.L. § 330.30.

the factual and legal premises underlying the claim. *Grey*, 933 F.2d at 119–20.

Respondent asserts that Bowers did not exhaust grounds one, two, and three of his habeas petition because he failed to present them in Federal constitutional terms to the New York Court of Appeals. *See* Resp't Ans. ¶¶ 4–5. I find, however, that claims one, two, and three have been exhausted and are amenable to habeas review.

■ Turning first to claim one regarding alleged juror misconduct, appellate counsel argued on direct appeal that the "lower court erred in denying appellant's motion pursuant to C.P.L. 330.30 without a hearing." Pet'r App. Div. Br. at 17, Ex. L. In the section of his appellate brief which discusses the dismissal of his C.P.L. § 330.30 motion without an evidentiary hearing, appellate counsel referred only to New York law and did not rely on the Constitution or federal constitutional precedents. *See Daye v. Attorney Gen'l of the State of N.Y.*, 696 F.2d 186, 192, 194 (2d Cir.1982). The three cases upon which counsel grounded his argument relied exclusively on C.P.L. § 330.30. *See* Pet'r App. Div. Br. at 18, Ex. L.

■ However, the gravamen of Bowers's first claim is that there was a "possibility that jurors were improperly influenced by outside sources," *id., viz.,* a news article concerning an inmate disturbance at Attica which was unrelated to the incident involving Bowers. Supreme Court precedent leaves no doubt that "[t]he right to a trial by an impartial jury lies at the very heart of due process.'" *Smith v. Phillips*, 455 U.S. 209, 225, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (Marshall, J., dissenting) (quoting *Irvin v. Dowd*, 366 U.S. 717, 721–22, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). "Due process requires that the accused receive a trial by an impartial jury free from outside influences." *Sheppard v.*

*Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *accord, e.g., Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 553, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).

Although counsel did not cite Federal constitutional precedents in his brief, he relied upon *People v. Rukaj*, 123 A.D.2d 277, 280, 506 N.Y.S.2d 677 (1st Dept. 1986), for the proposition that "when the spectre of an outside influence of the jury affecting defendant's *fundamental right to a fair trial* is raised, it is vital that hearing or other appropriate inquiry be held to ascertain what actually transpired." (emphasis added). *Rukaj*, in turn, cites to *People v. Phillips*, 87 Misc.2d 613, 631–32, 384 N.Y.S.2d 906 (N.Y.Sup.1975), *aff'd* 52 A.D.2d 758, 384 N.Y.S.2d 715 (1st Dept.1976), as authority for this notion. In *Phillips*, the court observed that although C.P.L. § 330.30 specifies that the defendant has the burden of proving by a preponderance of the evidence every fact essential to support a motion brought thereunder, "defendant's claim that he was denied his right to a fair trial is one of constitutional dimension." *Id.* (citing United States Constitution, Sixth Amendment; New York State Constitution, Art. 1, § 6).

The factual claims made in support of this argument—that Bowers was deprived a fair trial by reason of a jury tainted by prejudicial media exposure—assert "the deprivation of a particular right specifically protected by the Constitution" and are "well within the mainstream of constitutional litigation." *See Daye*, 696 F.2d at 194. In light of the particular importance of an impartial jury to a defendant's due process rights, combined with Bowers's reference to having been denied his fundamental right to a fair trial, I find that the state courts were "likely to [be] alert[ed] ... to the claim's federal nature." *Daye*, 696 F.2d at 192.

■ Bowers raised his second claim in a *pro se* supplemental brief submitted to the Appellate Division on direct appeal. Claim two alleges that "the people and/or the trial court knowingly present (sic) perjured testimony before the grand jury and/or at trial." Pet'r Supp. Br. at 2, Ex. N. The "principle that a State may not knowingly use false testimony to obtain a conviction-even false testimony that goes only to the credibility of the witness-is 'implicit in any concept of ordered liberty'" and has long been a part of the Supreme Court's jurisprudence. *United States v. Bagley*, 473 U.S. 667, 678 n. 8, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) and citing *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942)); *see also United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Bowers's claim that his conviction was obtained by resort to false testimony alleges "the deprivation of a particular right specifically protected by the Constitution" and is "well within the mainstream of constitutional litigation." *See Daye*, 696 F.2d at 194. Accordingly, I determine that the state courts were "likely to [be] alert[ed] ... to the claim's federal nature." *Id.* at 194.

■ Bowers's third claim, that he "was deprived of his constitutional right to cross-confrontation" was raised in his *pro se* supplemental brief. Pet'r Supp. Br. at 8, Ex. N. Citing to "U.S.C.A. 6" (sic), Bowers states that the "Sixth Amendment right to cross-examination extends beyond (sic) constitutional requirements of confrontation clause" and "guarantees opportunity for effective cross-examination." *Id.* Bowers's argument, which essentially cites "chapter and verse of the Constitution," *see Daye*, 696 F.2d at 194, "fairly presented" the constitutional nature of his third claim to the state court. Furthermore, counsel explicitly sought review of claims one, two and three in his leave letter to the New York Court of Appeals. *See* Leave Letter, Ex. P. Accordingly, these claims have been exhausted and are properly before this Court.

Respondent does not raise the failure to exhaust with regard to ground six, and I find that there is no explanation issue with regard to this claim. Bowers presented his sixth claim to the state courts in federal constitutional terms and specifically requested its review by the Court of Appeals. *See* Leave Letter, Ex. P.

■ I find, however, that there is an exhaustion issue with regard to grounds four and five because Bowers did not "fairly present" them to the New York Court of Appeals when he requested leave to appeal. As noted above, counsel's leave letter specifically enumerated the five grounds for which he sought review. The letter does not give even a passing mention to either the prosecutorial misconduct claim or the improper jury instruction claim. *See* Leave Letter, Ex. P. The only possible indication that Bowers intended to seek review of these two claims is counsel's statement that he was enclosing the briefs submitted to the Appellate Division in which these two claims were discussed. *See id.*

This general reference to the briefs submitted below, however, is insufficient to alert the Court of Appeals to the two claims. *See Grey v. Hoke*, 933 F.2d at 119 (petitioner's identification of one claim in his leave-to-appeal letter and enclosure of his Appellate Division briefs, which raised three issues including the one specified in the letter, did not fairly apprise the court of the two claims not mentioned in the letter); *accord Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir.2000) ("arguing a single

claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state courts of those remaining claims."). Claims four and five are therefore unexhausted.

 It is clear that Bowers can no longer exhaust these claims in state court. First of all, he is procedurally barred from raising the unexhausted claims before the New York Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. New York Court Rules § 500.10(a). Secondly, collateral review of these claims is unavailable because they were previously determined on the merits on direct appeal. C.P.L. §§ 440.10(2)(a); 440.10(2)(c) (barring review if claim could have been raised on direct review). These procedurally defaulted claims thus are "deemed exhausted." *See Grey,* 933 F.2d at 120.

 Federal habeas review of these procedurally defaulted claims is only possible if Bowers "can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" *i.e.,* a showing of "actual innocence." *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *accord Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990). As Bowers can meet neither prong of this test, he cannot overcome the procedural bar.

In any event, I note that these claims are factually baseless. I have reviewed the entire record and, as respondent points out in its habeas brief, the prosecutor did not make the allegedly objectionable statement described in Bowers's petition. Resp't Habeas Br. at 13 (citing Trial Transcript ("Trial Tr."), Ex. F. at 270–71). Moreover, no reasonable reading of the summation could yield a meaning approximating the one urged by Bowers in his petition. Similarly, the instruction actually read to the jury did not contain the phrase "reasonable doubt must be based on some good sound substantial reason" as initially claimed by Bowers in his petition. Nor may the instruction be paraphrased to result in such a meaning.

Bowers concedes that the allegations forming the basis of these two grounds "were misstatements of fact" due to his inability to obtain the trial transcript. Petitioner's Traverse ("Trav.") at 12. Therefore, even if they were not subject to a procedural default, Bowers would not be entitled to habeas relief on these two grounds. Accordingly, claims four and five are dismissed with prejudice.

### The Review Standard

Because the petition, which was filed on September 1, 2000, postdates the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding. *See Williams v. Taylor,* 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). When Congress enacted AEDPA, it significantly curtailed the role of federal habeas courts in reviewing petitions filed by state prisoners. *Id.* A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) and (2).

 A state court decision is "contrary to" established federal law if the state court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. A state court decision is an "unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular case." *Id.* at 407–08, 120 S.Ct. 1495. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* In order to justify habeas relief under § 2254, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. In sum, a federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal question differently. *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001). The state court's application of the federal law "must reflect some increment of incorrectness such that it may be said to be unreasonable." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

"A state court determination of a factual issue is, moreover, presumed to be correct." *Overton v. Newton,* 295 F.3d 270, 275 (2d Cir.2002). The state court's determination "is unreasonable only where the petitioner meets the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

■ Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies. For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits" and (2) reduces its disposi-

tion to judgment. *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

I now turn to consideration of the merits of the exhausted claims presented by Bowers's habeas petition.

### Merits of the Petition

### Denial of Impartial Jury Due to Prejudicial Media Exposure

■ Bowers asserts entitlement to habeas relief because the jury allegedly was influenced by exposure to prejudicial articles concerning an inmate assault at Attica, and the trial court failed to conduct an evidentiary hearing into his allegations. Pet'n at 5; 8–10. In denying this claim on direct appeal, the Appellate Division ruled as follows:

> County Court properly denied defendant's motion pursuant to CPL 330.30 to set aside the verdict based upon the jury's exposure to newspaper reports that correction officers were injured during a disturbance at Attica Correctional Facility. Although defendant was an inmate at that facility and was charged with assaulting a correction officer, the reports are unrelated to the instant offense and make no reference to defendant. "[T]he potential for prejudice from media publicity is most tenuous when it involves reports of similar crimes committed by other individuals, even members of a group associated with defendant" (*People v. Horney,* 112 A.D.2d 841, 842, 493 N.Y.S.2d 130, *lv. denied* 66 N.Y.2d 615, 494 N.Y.S.2d 1038, 485 N.E.2d 242, citing *People v. Moore,* 42 N.Y.2d 421, 397 N.Y.S.2d 975, 366 N.E.2d 1330, *cert. denied* 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482).

267 A.D.2d at 1052.

In support of his C.P.L. § 330.30 motion, Bowers offered the affidavits of two

jurors[3] which allegedly establish that the jury's deliberations were tainted by improper consideration of the newspaper articles, thereby prejudicing his right to a fair trial. According to Bowers, the jurors' deliberations stalled because "they wanted to know what was his motivation or purpose" for assaulting the correction officer. Pet'n at 10. He argues that the deadlock was broken by the jurors' recourse to the newspaper article, which allegedly stated that sometimes inmates assault officers as part of a gang-related rite of passage. *Id.* Respondent counters that Bowers's allegations about juror misconduct are wholly conjectural, and notes that the trial court, in denying the C.P.L. § 330.30 motion, held that Bowers's allegations were "pure speculation." Sentencing Tr. at 13, Ex. J.

### 1. *Sixth Amendment Claim*

■■■ Under the Sixth Amendment, a criminal defendant has a right to a trial by jury and the right to confront his accusers. *Loliscio v. Goord,* 263 F.3d 178, 185 (2d Cir.2001) (citing United States Constitution, amendment VI). " '[T]rial by jury in a criminal case necessarily implies at the very least that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.' " *Id.* (quoting *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965)). When extra-record material infiltrates the jury's deliberations, a criminal defendant's Sixth Amendment rights thus are implicated because the information was not subjected to the rigors of cross-examination at trial.

■■■ However, a determination that a "petitioner's Sixth Amendment rights have been violated by a jury's consideration of extra-record information is not sufficient to grant a writ of habeas corpus." *Id.* A court must also find "beyond a reasonable doubt that this constitutional error was not harmless." *Id.* (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))[4]; *accord, e.g., Benja-*

---

**3.** Juror Shirley Stevens stated that "[t]hroughout [their] deliberations, questions were raised as to why the defendant would have struck the correction officer, what was his motivation or purpose." Stevens Affidavit ("Aff.") ¶ 2, Ex. I. She further averred that on October 2, 1997 (after the jury's overnight recess and after the jurors would have seen the article about the Attica incident), she recalled hearing "juror Edward Gebel and another juror whose first name was Tom say that inmates who assault correction officers do it because it is a gang related activity or initiation ritual." *Id.* ¶ 4. Stevens stated that "[t]his was never raised by anyone during deliberations on October 1, 1997." *Id.* Juror Patricia Helwig submitted an affidavit offering essentially the same factual allegations. Helwig Aff., Ex. I.

**4.** It appears to be an open question in the Second Circuit as to what harmless error standard should be used, following the passage of AEDPA, by a federal court reviewing a state court judgment:

> [O]n direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Prior to the passage of AEDPA, federal habeas courts reviewing state harmlessness determinations employed a standard less demanding than *Chapman,* asking whether an error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). After AEDPA, the question arises whether a federal habeas court should continue to apply *Brecht* or determine instead whether the state court's decision was "contrary to, or involved an unreasonable application of" *Chapman.* 28 U.S.C. § 2254(d)(1).

*min v. Fischer*, 248 F.Supp.2d 251, 260 (S.D.N.Y.2002).

Because the determination of whether a petitioner's Sixth Amendment rights have been violated by the jury's consideration of extra-record information requires a determination of whether the information at issue had prejudicial effect on the verdict, the Second Circuit has instructed reviewing courts "to proceed immediately to the harmless error determination, assuming without deciding that a Sixth Amendment violation has occurred." *Loliscio*, 263 F.3d at 185 (citing, *e.g.*, *Bibbins v. Dalsheim*, 21 F.3d 13, 16–17 (2d Cir.1994) (applying *Brecht* harmless error standard); *United States v. Simmons*, 923 F.2d 934, 943 (2d Cir.1991)).

That inquiry asks whether Bowers has shown that the error was sufficiently harmful to result in a constitutional violation. The issue is "not the mere fact of infiltration of some molecules of extra-record matter, with the supposed consequences that the infiltrator becomes a 'witness' and the confrontation clause automatically applies, but the nature of what

has been infiltrated and the probability of prejudice." *Benjamin*, 248 F.Supp.2d at 262 (quoting *United States ex rel. Owen v. McMann*, 435 F.2d 813, 818 (2d Cir.1970)) (quotation omitted). An objective test is used to assess the prejudicial effect on an average juror. *Id.* (citing *Bibbins*, 21 F.3d at 17) (quoting *Miller v. United States*, 403 F.2d 77, 83 n. 11 (2d Cir.1968) and citing *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir.1989) (holding that the reviewing court must assess the effect of extra-record information on the hypothetical average juror); *Mercado v. Portuondo*, 2000 WL 1663437, at *11 (S.D.N.Y. Nov. 3, 2000) ("In determining prejudice, the Court must apply an objective test, assessing for itself the likelihood that the [extra-record information] would affect a typical juror.")).

There is some uncertainty in the Second Circuit as to what weight, if any, a habeas court may accord the subjective statements by jurors regarding the effect of extraneous information on their deliberations. *See Loliscio*, 263 F.3d at 186–89 (discussing *Bibbins*, 21 F.3d at 16–17).[5] I note that the jurors' affidavits in the pres-

---

*Murden v. Artuz*, 60 Fed.Appx. 344, 347 n. 2, 2003 WL 1191170 (2d Cir.2003) (declining to decide issue because any possible error was harmless under either of the standards discussed) (quoting *Noble v. Kelly*, 246 F.3d 93, 101–02 n. 5 (2d Cir.), *cert denied*, 534 U.S. 886, 122 S.Ct. 197, 151 L.Ed.2d 139 (2001) and citing *Sanchez v. Duncan*, 282 F.3d 78, 82 n. 2 (2d Cir.2002)); *see also Loliscio v. Goord*, 263 F.3d at 185 n. 1 (declining to decide question because petitioner failed to establish harmfulness under either standard); *Ryan v. Miller*, 303 F.3d 231, 254 (2d Cir. 2002) (declining to decide whether *Brecht* or "mixed AEDPA/ *Chapman*" standard applies because error not harmless under either standard; *compare Drake v. Portuondo*, 321 F.3d 338, 346 n. 4 (2d Cir.2003) (apparently disregarding applicability of *Chapman* standard on collateral review, noting that "[i]t appears to be an unsettled question in this Circuit whether, in light of the AEDPA regime, (i) we apply

the *Brecht* harmless error standard directly or (ii) ask if the state court's application of that standard was unreasonable.") (citing *Ryan*, 303 F.3d at 254).

5. In *Bibbins*, the Second Circuit began its analysis by noting that the Federal Rules of Evidence apply in federal habeas proceedings. 21 F.3d at 16 (citing Fed.R.Evid. 1101(e)). The Court then noted that "although Federal Rule of Evidence 606(b) permits 'jurors to testify "on the question of whether extraneous prejudicial information was improperly brought to the jury's attention," ... the juror may not go on to testify about the effect of that information on the juror's mental process or the jury's deliberations.' " *Id.* (quoting Fed.R.Evid. 606(b)). In other words, the Second Circuit explained, " '[w]here an extraneous influence [on the jury] is shown, the [reviewing federal] court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror.' " *Id.*

ent case differ in a significant respect from those submitted in *Loliscio* wherein the jurors disavowed any reliance on the extra-record information, and which were submitted by the State, *see* 263 F.3d at 185–86. Here, although the affidavits were offered by defense counsel in support of the motion to vacate the judgment, the jurors do not explicitly state that they considered the newspaper articles in arriving at their verdict. In fact, only one of the two juror affidavits actually declares that the jurors discussed the articles in question. *See* Helwig Aff., Ex. I. It is debatable whether these equivocal juror affidavits even constitute the types of "subjective statements" precluded from consideration under *Bibbins* and Federal Rule of Evidence 606(b).

Even if the jurors' affidavits are considered "subjective statements," I need not consider them here: the non-prejudicial nature of the publicity in question supports my finding that the jury's exposure to the newspaper articles did not result in harmful error. *See United States v. Calbas*, 821 F.2d at 896 n. 9 ("Although we find the non-prejudicial nature of [the] disclosures to be dispositive ... ").

As an initial matter, I note that the type of extra-record information present here does not fall within any of the categories of publicity that the Supreme Court has found to prejudicially color a jury's deliberations. As the Court's jurisprudence in this area makes clear, the most damning type of publicity is that which shows or

(quoting *Miller v. United States*, 403 F.2d 77, 83 n. 11 (2d Cir.1968)). Based on this precedent, the Second Circuit held that a juror's affidavit was "inadmissible to the extent that it recounts how [the] disclosure of extra-record information affected the thinking and voting of individual jurors or the deliberation of the jury as a whole, including the tally of votes." *Id.* Thus, *Bibbins* appears to preclude the consideration of a juror's subjective statements on habeas review, even if the trial court relied on them in rejecting a defendant's Sixth Amendment claim predicated on jury consideration of extra-record information.

In *Loliscio*, the petitioner relied upon *Bibbins* to oppose the district court's reliance on subjective juror affirmations that the extra-record information did not affect their deliberations. The State responded that if, as petitioner urged, *Bibbins* disallows consideration of such juror statements, it requires the "application of federal evidentiary rules to state court proceedings." 263 F.3d at 187. The State argued that *Bibbins* thereby essentially federalizes state evidentiary proceedings, a requirement that is inconsistent with AEDPA's mandate to determine whether the state court "unreasonably applied" Supreme Court precedent. *Id.*

Faced with this challenge, the Second Circuit agreed that *Bibbins*, decided two years prior to the passage of AEDPA, "appears to

be in some tension with the heightened degree of deference to state court decisions mandated by AEDPA." *Loliscio*, 263 F.3d at 187 (citing *Williams v. Taylor*, 529 U.S. at 386, 120 S.Ct. 1495). However, the *Loliscio* court did not "reach the question of *Bibbins'* vitality in the wake of AEDPA because, even without considering the jurors' subjective statements," it found that the Appellate Division's holding did not offend AEDPA. The Second Circuit based its conclusion "solely on the juror's objective statements," noting that their description of how they heard the prejudicial information (rumors about the petitioner's prior bad acts) and the circumstances surrounding the introduction of that information clearly indicated that the extent to which the jury considered the rumors was "quite negligible." *Id.* at 189 (citing, *e.g.*, *United States v. Calbas*, 821 F.2d 887, 896 n. 9 (2d Cir.1987); *Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)). The Court proceeded to note that only three or four jurors actually heard the rumors and that the jury deliberated for several additional days thereafter. *Loliscio*, 263 F.3d at 189–90. Furthermore, the State had presented a considerable amount of circumstantial evidence tending to show that petitioner was guilty, leading the Second Circuit to conclude that any error in the consideration of the extra-record information did not prejudice the petitioner. *Id.* at 190.

states that the defendant has committed the crime charged. *See, e.g., Sheppard,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; *Irvin,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In general, references to the fact that the defendant has committed other crimes have a less damaging effect. *See, e.g., Murphy v. Florida,* 421 U.S. 794, 797, 798, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *compare Marshall v. United States,* 360 U.S. 310, 311–13, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1975). Such collateral references nevertheless may prejudice his case; this is particularly true when the other crimes are similar, or otherwise related, to the crime charged. *See, e.g., Irvin,* 366 U.S. at 726, 81 S.Ct. 1639 (publicity included story that petitioner confessed to 24 burglaries; the *modus operandi* of these robberies was compared to that of the murders for which he was on trial and the similarity noted). However, the Constitution does not impose an "impossible standard." *Id.* at 723, 81 S.Ct. 1639. What the courts generally condemn is the "trial by newspaper" or other media source in which a substantial part of the community from which the jury is drawn has been exposed to inflammatory reports purportedly establishing defendant's guilt. *See, e.g., Sheppard,* 384 U.S. at 354–57, 86 S.Ct. 1507; *Irvin,* 366 U.S. at 725–28, 81 S.Ct. 1639.

Here, in contrast, the articles did not even mention Bowers or anyone with whom he was associated, nor did they discuss his trial or the incident for which he was being tried. Besides the fact that both transpired at Attica, the only other congruence between the inmate assault in which Bowers was involved and the one reported in the newspapers is that both occurred as the inmates were en route to the mess hall. Trav. at 3–4. As mealtime ostensibly is one of the few times during the day that inmates would be walking to and from their cells, this similarity is hardly telling.

Reduced to its essence, Bowers's argument is that the jury arrived at an impasse concerning his motive in assaulting the correction officer and then resolved that issue by improperly relying on the newspaper articles. Pet'n at 10. Although it appears from the jurors' affidavits that the articles were discussed on the same day that the jury rendered its verdict, conspicuously absent is any allegation that the jurors used the information in the articles to overcome the deadlock. *See* Stevens Aff. and Helwig Aff., Ex. I.

Further undercutting Bowers's argument is the fact that the jury did not render its verdict on the morning of October 2nd, immediately after having read the articles the night before. Rather, they deliberated for approximately five more hours during which time they asked the trial court to discuss self-defense and "lack of evidence," requested information as to whether Bowers resided on the block usually supervised by Orlowski, and asked to see the photographs admitted in evidence. Trial Tr. at 344–47, Ex. G.

Importantly, even assuming that the jurors were curious about Bowers's "motivation or purpose," *see* Stevens Aff. and Helwig Aff., Ex. I, it was not necessary to answer that question in order to decide the ultimate issue of his guilt. Although intent is an essential element of the crime charged, the defendant's motivation is not.[6] After the jury requested further informa-

---

6. P.L. § 210.05(3) provides in relevant part as follows: "With intent to prevent a peace officer ... from performing a lawful duty ... [the defendant] causes physical injury to such peace officer[.]"

tion on the nature of intent, the court instructed that

> even if [you were] present at the time of the commission of the crime, [you] could not examine the invisible operation of a person's mind; therefore, in order to determine whether a defendant intended at the time of the commission of the crime (sic), the law permits the jury to consider the act and conduct of the defendant before, during or after the commission of the crime. As jurors, you may therefore consider the nature and manner of the defendant's acts and conduct and the result caused by such conduct in order to determine whether the defendant acted intentionally in committing the crime of assault second degree.

Trial Tr. at 321–22, Ex. F. The court then elaborated on the element of intent in regard to the particular crime charged, noting that "a person intends to prevent a correction officer from performing a lawful duty when his conscious aim or objective is to engage in such conduct ... a person knows that another person is a correction officer and that he is performing a lawful duty when he is aware that such a person is a correction officer performing a lawful duty; that is, the duty to guard and supervise inmates and keep order." *Id.* at 326. Thus, the court's instructions were clear that the jury was not to consider Bowers's thought processes, as indeed it could not, in determining whether the requisite intent existed on his part. In addition, I note that the jurors were re-read the reasonable doubt charge during their deliberations and therefore heard again that their verdict was to be based upon "the nature and quality of evidence *in the case.*" Trial Tr. at 351, Ex. G (emphasis supplied).

Thus, the presence or absence of a motivating force behind Bowers's actions was irrelevant to the determination of whether he was guilty of the assault. *See* P.L.

§ 210.05(3); Trial Tr. at 300–01, Ex. F. Consequently, the newspaper articles which purportedly discussed *why* inmates sometimes assault correction officers did not bear on the material issue in this case of whether Bowers, by his conduct, intended to interfere with Orlowski's performance of his duties.

On the record before me, I find that the jury's exposure to the newspaper articles discussing an unrelated inmate disturbance at Attica is harmless beyond a reasonable doubt. *See Loliscio,* 263 F.3d at 190 (citing *Chapman,* 386 U.S. at 24, 87 S.Ct. 824). In the alternative, I conclude that the disclosure did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See id.* at 190 n. 7 (citing *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710). The Appellate Division's decision that the trial court properly denied the motion to set aside the verdict due to the fact that no palpable prejudice inured to Bowers as a result of the extra-record information, 267 A.D.2d at 1052, is neither "contrary to" nor an "unreasonable application of" clearly established Federal law. Therefore, the writ may not issue on this ground.

### 2. *Due Process Claim*

■ Bowers's claim regarding juror exposure to extra-record information also may be characterized as a due process claim, inasmuch as he claims that the trial court's handling of the post-verdict factual inquiry was constitutionally inadequate. *See Loliscio,* 263 F.3d at 191. However, Bowers has failed to demonstrate that the Appellate Division's finding that the trial court properly denied his C.P.L. § 330.30 motion without a hearing was "contrary to" or involved an "unreasonable application" of clearly established Supreme Court precedent.

■ "The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial." *Marshall v. United States*, 360 U.S. 310, 311, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *accord, e.g., Loliscio*, 263 F.3d at 191. Indeed, the Supreme Court has explicitly refused to define the contours of what type of inquiry is required by the trial court in cases of jury infiltration of extra-record information. *See Marshall*, 360 U.S. at 311, 79 S.Ct. 1171 ("Generalizations beyond [the] statement [that the trial judge retains great discretion] are not profitable, because each case must turn on its special facts."). I cannot find, on the record before me, that the trial court abused its discretion in not ordering a further evidentiary hearing. Accordingly, this ground cannot afford Bowers habeas relief.

### Denial of Sixth Amendment Right of Confrontation

■ Bowers claims that the trial court improperly curtailed counsel's cross-examination of Orlowski concerning his supporting deposition after the incident regarding his the extent of his injuries. *See* Pet'n at 6, 13. In this statement, which was presented to the Grand Jury, Orlowski stated that he "remember[ed] the blows to the head and the jolts of pain in [his] head and back ..." *Id.;* Orlowski Supporting Deposition, Ex. R. Bowers asserts that at trial, Orlowski testified that "he had a black eye; with multiple contusions on the back of his head; his elbows and knees were swollen black and blue; he suffered unrelenting pain; and that he injured his tailbone: (sic) broken tailbone." Pet'n at 11. However, Orlowski did not testify at trial that he had broken his tailbone; in fact, he testified that he did not suffer any fractured bones at all. *See* Trial Tr. at 39, Ex. E. Thus, Bowers's allegations of inconsistencies are based solely on the fact that

the deposition does not mention the black eye, lumps on the head, bruised elbows and knees, and long-term pain. On direct appeal, the Appellate Division simply dismissed this claim as "without merit." *Bowers*, 267 A.D.2d at 1052, 700 N.Y.S.2d 785.

"Under certain circumstances prior silence concerning critical facts might be deemed inconsistent with later testimony which includes their purported recollection." *United States. v. Leonardi*, 623 F.2d 746 756 (2d Cir.1980). For this to be the case, however, "the failure to mention those matters must conflict with that which is later recalled." *Id.* Where, as here, "the belatedly recollected facts merely augment that which was originally described, the prior silence is often simply too ambiguous to have any probative force." *Id.* (citing *United States v. Hale*, 422 U.S. 171, 177, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975)) ("In most circumstances silence is so ambiguous that it is of little probative force."); *accord Victory v. Bombard*, 570 F.2d 66, 70 (2d Cir.1978). Accordingly, it typically is not sufficiently inconsistent to be impeaching. *See Leonardi*, 623 F.2d at 756 (citing *Victory*, 570 F.2d at 70).

At trial Orlowski testified to having received additional injuries than those previously mentioned; Orlowski did not state in his supporting deposition that he did *not* suffer a black eye, lumps on the head, and bruised elbows and knees. *See, e.g., Victory*, 570 F.2d at 70. Moreover, Orlowski's testimony that he withstood a black eye and lumps on his head in fact is consistent with his deposition in which he recalled receiving blows to his head. Thus, I find that the deposition's silence does not create a sufficient inconsistency to be probative for impeachment purposes.

 Moreover, it is debatable as to whether the trial court in fact circumscribed defense counsel's cross-examination.[7] I agree with respondent that the only occasion on which the trial court arguably came close to restricting cross-examination was when defense counsel attempted to refresh Orlowski's recollection of his trial testimony from earlier that day by using the supporting deposition. The trial court did not allow this. Trial Tr. at 59.

After reviewing the entire transcript, I find that defense counsel otherwise retained wide latitude in his questioning and he extensively cross-examined Orlowski and the officer who took the deposition. Trial Tr. at 55–61, Ex. E; *see also id.* at 174–77, 179–80. In addition, *defense counsel* sought to exclude the supporting deposition: when the prosecutor attempted to introduce it into evidence, defense counsel objected. *Id.* at 80.

Finally, and perhaps of most importance, the testimony that Bowers claims is rife with inconsistencies only concerns the extent of Orlowski's injuries and arguably is only marginally relevant on the question of guilt. Even if it had been improperly excluded, Bowers would not be entitled to habeas relief. *See Justice v. Hoke,* 90 F.3d 43, 47 (2d Cir.1996) (exclusion of evidence amounts to constitutional error only if it would have created a reasonable doubt where none previously existed). The Appellate Division's determination that Bowers's cross-examination claim was without

merit clearly is not an "unreasonable application" of clearly established Federal law. This ground accordingly is dismissed.

### Knowing Presentation of Perjured Testimony by the Prosecutor

 As a further ground for habeas relief, Bowers argues that the prosecutor knowingly allowed Orlowski to present perjured testimony at trial. The testimony at issue consists of the alleged discrepancies between Orlowski's description of his injuries in his supporting deposition and at trial. The Appellate Division summarily dismissed the claim as without merit. *Bowers,* 267 A.D.2d at 1052, 700 N.Y.S.2d 785.

 The Supreme Court analyzes claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment. *Drake v. Portuondo,* 321 F.3d 338, 345 (2d Cir. Jan.31, 2003) (citing *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). Under this standard, the Supreme Court has said that the conviction must be set aside if (1) "the prosecution knew, or should have known, of the perjury," and (2) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Drake,* 321 F.3d at 345 (citing *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

---

**7.** "Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." *United States v. Rosa,* 11 F.3d 315, 336 (2d Cir. 1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994) (citing *United States v. Roldan–Zapata,* 916 F.2d 795, 806 (2d Cir.1990), *cert. denied,* 499 U.S. 940, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991)). Moreover, the court retains " 'wide latitude . . . to impose reasonable limits on such cross-exam-

ination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant.' " *Jones v. Berry,* 880 F.2d 670, 673 (2d Cir.1989) (quoting *Delaware v. VanArsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). Finally, "the scope and extent of cross-examination are generally within the sound discretion of the trial court, and the decision to restrict cross-examination will not be reversed absent an abuse of discretion." *United States v. Rosa,* 11 F.3d at 335–36.

Bowers's claim is fatally deficient for several reasons. First of all, inasmuch as Orlowski's statements before and during trial[8] were not inherently contradictory, *see* pages 21–22, *supra*, they simply do not constitute perjury. Secondly, even if the statements are deemed perjurious, which I explicitly do not find to be the case, Bowers has presented no evidence of any prosecutorial misconduct with regard to Orlowski's testimony. Lastly, there is no "reasonable likelihood" that the testimony at issue, which merely concerned the extent of Orlowski's injuries, could have affected the jury's judgment concerning Bowers's culpability for the assault.

Since Bowers failed to demonstrate an underlying constitutional violation occurring at trial, let alone the existence of actual perjury, the Appellate Division's conclusion that this claim is "without merit" is neither "contrary to" nor an "unreasonable application of" clearly established Supreme Court precedent. Accordingly, Bowers's claim that his conviction was based on false testimony is dismissed.

### *Ineffective Assistance of Trial Counsel*

In his habeas petition, Bowers argued that his trial counsel was ineffective for failing to object when the prosecutor placed his credibility in issue before the jury and for failing to object to a purportedly erroneous jury instruction. Pet'n at 6. Bowers has conceded that these two claims are based on an incorrect recollection of the statements actually made by the prosecutor and the trial judge. *See* Trav. at 12. Absent a factual basis for these claims, they must be dismissed.

I note that Bowers appears to press a claim that his counsel was ineffective for failing to object when the trial court allegedly curtailed his cross-examination of Orlowski. *See* Trav. at 13 ("Petitioner wishes not to cite memorandum of law on ground 3 [the cross-examination claim], but still maintains counsels (sic) actions were egregious."). In light of my determination that this claim lacks in merit, *see* pages 20–23, *supra*, I find that Bowers could not have suffered any prejudice due to counsel's failure to object at trial. Consequently, Bowers cannot establish ineffective assistance under *Strickland*'s rigorous two-part test. *See Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (petitioner must show deficient performance and actual prejudice resulting therefrom); *cf. Flores v. Keane,* 211 F.Supp.2d 426, 435 (S.D.N.Y.2001) (counsel failed to preserve objection to prosecutor's comments; petitioner unable

---

**8.** Within the context of his perjury claim, Bowers makes an additional argument that the prosecutor elicited testimony before the Grand Jury from Orlowski concerning his injuries that was inconsistent with his supporting deposition. Pet'n at 11. However, claims of error occurring before the Grand Jury are not cognizable on habeas review. *See Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir.1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a *petit* jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in federal court."). Bowers also asserts that the prosecutor stated falsely in response to defendant's omnibus motion that he was unaware of any inconsistent statements of the People's witnesses and that he "purposely invalidated his omnibus motion response" by "swearing it" before a notary public whose commission had expired. Pet'n at 12. As respondent's submissions make clear, the commission was valid on the date in question and the error was merely clerical on the notary's part. *See* Docket ("Dkt.") # 8, Affidavit of Darren Longo; Dkt. # 7, Affidavit of Notary Public Mary Crist. Moreover, as respondent points out, New York's Executive Law provides that an expired commission does not invalidate or impair any official acts performed by the notary public. Resp't Habeas Br. at 11 (citing N.Y. Exec. Law § 142(a)). These additional grounds alleged by Bowers thus are without basis in fact or law and are dismissed.

to establish prejudice to excuse procedural default where state court held that if it were to consider claim, it would find it unmeritorious).

Bowers's claim that he was deprived the effective of assistance of counsel accordingly is dismissed.

## CONCLUSION

For the foregoing reasons, the petition of Keith Bowers for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because Bowers has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. 28 U.S.C. § 2253.

IT IS SO ORDERED.